## In re CHENEY BROS.
### No. 16051.

District Court, D. Connecticut.
Oct. 29, 1935.

See, also, 12 F.Supp. 609.

Allin, Tucker & Allen, of New York City (George L. Allin, of New York City, of counsel), for Madison-Belmont Corporation, landlord.

Robinson, Robinson & Cole, of Hartford, Conn., for Cheney Bros., debtor, tenant.

THOMAS, District Judge.

This matter is now before the court on objections to the report of the special master, recommending the rejection of a certain lease.

In this proceeding for corporate reorganization, instituted under the provisions of section 77B of the Bankruptcy Act (11 USCA § 207), the debtor filed its petition seeking an order directing the rejection of the lease between it as tenant, and Madison-Belmont Corporation, as landlord. The lease was made in 1925, and it affects property on Madison avenue and 34th street, in the city of New York. It expires April 20, 1945, and provides for an annual rental of $155,000, payable in monthly installments in advance. A rental modification exists, covering the period commencing August 1, 1934, and ending July 31, 1936.

No plan for corporate reorganization, pursuant to the provisions of section 77B (b) of the act, 11 USCA § 207 (b), has as yet been filed. This proceeding was commenced before the special master, and hearings were held before him. The special master has made his report recommending the rejection of the lease, to which report the landlord has filed various objections.

The chief objection, rephrased in various forms, is that, in a corporate reorganization proceeding had pursuant to section 77B of the Bankruptcy Act, the court has no power to order the rejection of a lease "in anticipation of the presentation of a plan of reorganization." As this objection proceeds upon a close textual scrutiny of the statute, we must perforce turn to the text to see whether or not it is tenable.

It will be noticed that section 77B has attempted to legislate a comprehensive set of mechanics for the reorganization of a corporation in financial difficulties. The text will bear simplification; there is more than one obvious redundancy to be found there. But upon an attentive reading of the statute, there does emerge a fairly well concatenated set of provisions, placed in more or less sequential order.

Paragraph (a) provides how, when, and where a petition may be filed.

Paragraph (b) determines the contents of any proposed plan of reorganization.

Paragraph (c) provides for all sorts of ad interim proceedings, pending the submission and adoption of such a plan.

Paragraph (d) provides for the submission of plans by creditors or stockholders.

Paragraph (e) provides how plans are to be accepted by stockholders and creditors.

Paragraph (f) provides the conditions under which a court may confirm a proposed plan of reorganization.

We need carry our analysis no further.

In outlining the various components of such a plan for reorganization, provision is made in section 77B (b) (6) of the act, 11 USCA § 207 (b) (6), for the rejection of "contracts of the debtor which are executory in whole or in part, including unexpired leases." This subsection, section 77B (b) (10), and 11 USCA § 207 (b) (10), further provides that "in case an executory contract or unexpired lease of real estate shall be rejected pursuant to direction of the judge given in a proceeding instituted under this section, or shall

have been rejected by a trustee or receiver in bankruptcy or receiver in equity, in a proceeding pending prior to the institution of a proceeding under this section any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor."

Section 77B (c) of the act, 11 USCA § 207 (c), it will be remembered, provides for various interlocutory proceedings, pending the submission and confirmation of a proposed reorganization plan. The court may appoint a trustee or continue the debtor in possession, fix the trustee's bond, authorize the borrowing of money on trustee's certificates, direct the filing of schedules, limit the time within which claims must be proved, determine allowances, and do all the things customarily done in equity proceedings for the conservation of assets. Among these things he "may direct the rejection of contracts of the debtor executory in whole or in part." Section 77B (c) (5) of the act, 11 USCA § 207 (c) (5).

The landlord has not failed to note that "unexpired leases" are segregated from "executory contracts" in the text of section 77B (b), which is the section dealing with the contents of the proposed plan of reorganization; whereas "unexpired leases" are not mentioned at all in section 77B (c), a subsection dealing with the disposition of various interlocutory matters. Upon this difference in nomenclature, the landlord predicates its contention that unexpired leases are not executory contracts within the meaning of section 77B (c), and therefore not subject to rejection "in anticipation of a plan of reorganization."

The language of counsel has been carefully limited; but such limitation will not avail to confine the reach of his logic. For if an "unexpired lease" is not an "executory contract" and therefore may not be rejected in advance of a plan of reorganization, then there is no time when it may be rejected short of final confirmation of such reorganization plan. There is nothing in the statute which suggests a midway point between submission and confirmation at which rejection is possible. But, confirmation depends upon the existence of certain conditions precedent, one of which is the concurrence of a certain percentage in the amount of creditors' claims. As the landlord's lease has not been rejected, and as it cannot be rejected until confirmation, the

question presented is this: Is the landlord a creditor for the purpose of computing such percentage and, if so, in what amount? Following straitly the line of the landlord's argument, we must conclude that as the landlord's lease is in esse in all its pristine force, the landlord cannot be a creditor until the plan of reorganization, embodying rejection of its lease, has been confirmed, after which time any concurrence or opposition to the plan of reorganization by it would be rather irrelevant.

From this reductio ad absurdum we turn to the literal text. Let us in the first place note that the very subsection dealing with the contents of a plan of reorganization envisages the possibility of the rejection of an unexpired lease prior to the confirmation of such plan. For it is therein provided (section 77B (b) (10) that if an unexpired lease of real estate shall be rejected "pursuant to direction of the judge given in a proceeding instituted under this section," then "any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor." The creditor relation, therefore, may come into existence prior to acceptance of the plan. As the lease must have been rejected in order to evoke this creditor relation, such rejection must have been accomplished prior to the confirmation of the plan of reorganization.

Section 77B (b) (6), while separately mentioning "unexpired leases," does not do so either in contradistinction to or in segregation from "executory contracts." The section obviously classifies an unexpired lease as one of a variety of executory contracts, for the language here is that the plan may reject contracts, executory in whole or in part, "including" unexpired leases. If an unexpired lease was not regarded as an executory contract, then the word "including" would not have been used; the word "and" would have been appropriate and would have been used, and section 77B (b) (6) would have read "may reject contracts of the debtor which are executory in whole or in part, and unexpired leases."

But if an unexpired lease is an' executory contract within the purview of section 77B (b), why was it thought necessary to specially mention it? Perhaps the answer to that question may be found in the historic background. It will be remembered that landlord's claims, founded on

unexpired leases, were consistently rejected in bankruptcy proceedings, a fate which did not overtake claims founded on other executory contracts. Section 77B is now a part of the Bankruptcy Act. Unless unexpired leases were specifically legislated into the category of executory contracts, the phrase "executory contracts" might have been interpreted in a way consistent with the previous judicial constructions of the act.

If this be so, then why does not section 77B present a uniform terminology; specifically, why do we not have a repetition of the addendum, unexpired leases, in section 77B (c) (5)? There the language is, "may direct the rejection of contracts of the debtor executory in whole or in part."

■■ Perhaps, if the act had been better drawn, this question would never have arisen. A set of accurate definitions would have obviated questions like the one at bar. In our view of the matter, an unexpired lease is in fact an executory contract, and there is nothing in the language of the act which justifies the surmise that the Congress did not so regard it. When the landlord claims that a lease is not a contract, executory in whole or in part, but an estate in land, he enters a domain of dubious casuistry in which he is by no means invulnerable. For a lease as such is not an estate in anything, though a leasehold is. The lease embodies a demise from the landlord, in addition to contractual obligations from the landlord to the tenant, but mostly from the tenant to the landlord. The leasehold created by the lease is an estate which inheres not in the landlord but in the tenant; the voluntary relinquishment of which by the tenant is not a matter of which the landlord may complain, so long as the tenant complies with the covenants of the lease, the chief of which, of course, is a covenant to pay the rent reserved. The contention that a covenant to pay rent in consideration of the demise is not a contract is wholly inadmissible. In so far as such rent payment has not yet matured, the contract is executory.

Nor can we perceive that the policy of the act furnishes any ground for differentiation between unexpired leases and other executory contracts. It is conceded that prior to the submission of a proposed reorganization plan, and therefore without any certainty that any reorganization plan ever will be confirmed, executory contracts of the debtor may be "rejected" by the court. Such power covers an infinite variety of subject-matter. If a court may reject a contract for the acceptance or delivery of merchandise in installments; or the balance of the term of a contract for personal services; or for telephone services or carrier service; or for future use of gas, steam, or electricity, all before it could be known whether a plan of reorganization would or would not eventuate, then what is there in the implicit policy of the act to indicate that the court could not act in the same way with reference to the future use of land?

If the matter were now before us for legislative action, we could perceive no substantial ground for differentiating the executory covenants of a lease from any other kind of executory contract. The lack of uniformity in the legislative terminology does not supply us with such substantial ground.

■ It is next contended that whatever right a bankrupt trustee might have had in the premises to effect the rejection of the lease, such right does not inhere in nor is it exercisable by the debtor. This contention, however, overlooks the fact that a debtor in corporate reorganization proceedings may have a double status; that when, as in the instant case, such debtor is by an order of the court continued in possession, it acquires the status of a bankruptcy trustee. More important than this, however, is the complete misconception as to where the authority to reject executory contracts resides. Power to reject an executory contract under section 77B (c) is not lodged in the debtor, nor in his trustee. Such power devolves exclusively upon the judge, and there is no restriction as to the agencies by which that power may be invoked. The exercise of such power is not necessarily predicated on a petition of the debtor or trustee. Any party in interest may invoke it. It is exercisable sua sponte. The abuse of such power is subject to the supervisory procedure applicable to the correction of any other abuse of power in bankruptcy proceedings.

■ The constitutionality of the statute is attacked. So far as this court is concerned, that question is foreclosed by two recent decisions of the Circuit Court of Appeals of this Circuit. In re Central Funding Corporation, 75 F.(2d) 256; In re New Rochelle Coal & Lumber Company, 77 F.(2d) 881.

Objection is next made to the report upon the merits. The master heard all the parties in interest, and the court cannot find that the master's conclusions and recommendations are unsupported by the evidence. The most significant exhibit produced at the hearings before him constitutes a schedule of gross sales had on the premises, and is as follows:

| Year | $ |
|------|-----|
| 1925 | $20,385,200.62 |
| 1926 | 19,742,130.19 |
| 1927 | 17,745,635.35 |
| 1928 | 18,266,520.71 |
| 1929 | 17,106,832.87 |
| 1930 | 12,575,564.71 |
| 1931 | 9,367,470.73 |
| 1932 | 4,514,084.18 |
| 1933 | 4,515,058.92 |
| 1934 | 5,004,227.62 |

It cannot be denied that what was a reasonable provision for rent on the basis of $20,000,000 annual gross sales may constitute an excessive overhead on the basis of $5,000,000 gross sales.

No basis exists for any attack on the factual findings of the master, and his recommendation is approved. Submit order accordingly properly consented to as to form.