Viola MOOREHEAD, Maude Owens, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Patricia R. HARRIS, Secretary of the United States Department of Housing and Urban Development, Joseph B. Goldman, Acting Commissioner of Housing and Community Renewal of the State of New York and Harrison House Associates, a New York limited partnership, Defendants.

Aurele LaBONTE, Mary T. Smith, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Patricia R. HARRIS, Secretary of the United States Department of Housing and Urban Development, Joseph B. Goldman, Acting Commissioner of Housing and Community Renewal of the State of New York and Townsend Tower Associates, a New York limited partnership, Defendants.

Nos. 77–CV–505, 77–CV–506.

United States District Court, N. D. New York.

April 10, 1978.

Onondaga Neighborhood Legal Services, Inc., Syracuse, N. Y., for plaintiffs; Gilbert B. Beck, Anthony J. Gigliotti, Syracuse, N. Y., of counsel.

Paul V. French, U. S. Atty., Syracuse, N. Y., for defendants Harris; Arthur A. Chalenski, Asst. U. S. Atty., Syracuse, N. Y., Hiram C. Eastland, Dept. of Justice, Washington, D. C., of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Syracuse, N. Y., for defendants Goldman; Sidney L. Grossman,

Asst. Atty. Gen. of the State of New York, Syracuse, N. Y., of counsel.

Lawler & Ferris, DeWitt, N. Y., for defendants Harrison House Associates and Townsend Tower Associates; Robert H. Lawler, DeWitt, N. Y., of counsel.

## MEMORANDUM–DECISION

MUNSON, District Judge.

Plaintiffs are low income tenants in Harrison House and Townsend Tower, which are federally assisted housing projects under § 236 of the National Housing Act. 12 U.S.C. § 1715z–1.

Plaintiffs seek to compel the Secretary of the United States Department of Housing and Urban Development ("HUD") to implement the operating subsidy program under § 212 of the Housing and Community Development Act of 1974 ("1974 Act") and § 206 of the Housing and Community Development Act of 1977 ("1977 Act"). 12 U.S.C. § 1715z–1(f)(3), (g). They also seek to rescind a rent increase approved by HUD and by the Acting Commissioner of Housing and Community Renewal of the State of New York ("State Commissioner").

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1337, 1361.

Plaintiffs have moved for a preliminary injunction, summary judgment, and class certification. The federal and state defendants have moved to dismiss, or, in the alternative, for summary judgment. A hearing was held in these matters on March 30, 1978. An Order was issued by this Court on March 31, 1978, setting forth its rulings on the various motions. This Memorandum-Decision is being issued in connection with that Order.

## I.

The purpose of the National Housing Act is to provide adequate housing for low income families. Section 236 of the Act is designed to further this goal by providing mortgage insurance and interest reduction payments to mortgagees on behalf of project owners of newly constructed or rehabilitated housing. The payment of interest subsidies makes it possible for the landlords to charge lower rentals.

In 1974, Congress amended § 236 to provide an additional subsidy, known as an operating subsidy, to cover increased utility costs and local property taxes. Pub.L. 93–383, 88 Stat. 672. The subsidy was intended to assist project owners to maintain rentals at a level not greater than 30% of the tenants' incomes. HUD refused to implement the operating subsidy program under the 1974 Act, contending that it was entirely within its discretion to decide whether this provision should be put into effect. Numerous courts rejected this position, holding that HUD was required to implement this program. *See, e. g., Abrams v. Hills,* 547 F.2d 1062 (9th Cir. 1976), *cert. granted sub nom., Harris v. Abrams,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977); *Underwood v. Hills,* 414 F.Supp. 526 (D.D.C.), *appeal pending,* (D.C.Cir.), *order stayed,* 429 U.S. 892, 97 S.Ct. 250, 50 L.Ed.2d 175 (1976); *Gertsch v. Hills,* 414 F.Supp. 15 (D.Utah 1976); *Dubose v. Hills,* 405 F.Supp. 1277 (D.Conn.1975), *modified,* 420 F.Supp. 399 (D.Conn.1976); *Ross v. Community Services, Inc.,* 396 F.Supp. 278, *subsequent opinion,* 405 F.Supp. 831 (D.Md. 1975), *aff'd,* 544 F.2d 514 (4th Cir. 1976), *cert. granted sub nom., Harris v. Ross,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977). In *Underwood v. Hills, supra,* the district court certified a national class action and ordered HUD to make operating subsidy payments immediately on a nationwide basis. This Order has been stayed by the Supreme Court.

In 1977, Congress amended § 236 to make it clear that HUD is required to make operating subsidy payments to qualifying project owners to the extent that money is available either in the reserve fund or in appropriation acts enacted by Congress. Pub.L. 95–128, 91 Stat. 1130. Payments are to be made up to the amount by which the cost of utilities and local property taxes exceeds the initial operating expense level. Under the 1977 Act, HUD is required to establish the initial operating expense levels for § 236 projects not later than 180 days

after the date of enactment (October 12, 1977).

## II.

Harrison House and Townsend Tower were constructed and financed under the New York State Urban Development Corporation Act and the New York State Private Housing Finance Law. Both projects receive interest reduction payments on their mortgages under § 236 of the National Housing Act.

On October 26, 1977, the State Commissioner approved a rent increase for each project. In approving the rent increase, the State Commissioner found that there was a substantial increase in the cost of operating each project and that the present rental rates were insufficient to enable the project owners to meet all payments which the Private Housing Finance Law required them to make. The rent increase was approved by HUD on November 21, 1977.

For Harrison House, the increase in the maximum average room rental is $5.26 per month, effective December 1, 1977, and an additional $5.26 per month, effective December 1, 1978. For Townsend Tower, the increase in the maximum average room rental is $4.20 per month, effective December 1, 1977, and an additional $4.20 per month, effective December 1, 1978.

Harrison House and Townsend Tower each contain approximately 200 tenants, about 80 of whom would not have to pay the rent increase since they are on either the leased housing or rent supplement programs of the National Housing Act.

As of September 30, 1977, the reserve fund established under § 236(g) contained almost $60 million, but this money has been committed by HUD to the settlement of litigation under the 1974 Act. As of December 31, 1977, an additional amount of approximately $2.39 million had accumulated in the reserve fund. The reserve fund accumulates at a rate of more than $750,000 per month. Congress, as of this time, has not authorized any additional appropriations for this program, and President Carter has not requested any additional funds in the budget he submitted to Congress.

It is estimated that the total demand throughout the country for operating subsidy payments under the 1977 Act greatly exceeds the amount of money available for this purpose.

Two tenants testified at the hearing as to their financial situation—Viola Moorehead and Aurele LaBonte. Viola Moorehead is a 71 year old widow who lives alone in a two-bedroom apartment at Harrison House. She does not anticipate moving to a smaller apartment because she has not been well and might later need someone to stay with her for a brief period of time. Her rent is being increased from $167 a month to $190 a month. Her monthly income consists of $287.90 in Social Security benefits plus approximately $100 in interest from savings accounts totaling more than $24,000. She has had to occasionally make withdrawals from the bank accounts to pay expenses.

Aurele LaBonte is a 53 year old man who lives alone in an efficiency apartment at Townsend Tower. His rent is being increased from $118 a month to $131 a month. Mr. LaBonte, who is unable to work because of a medical disability, receives $211 a month from the Department of Social Services and is also a recipient of food stamps. He has been paying the rent increase since December; and, as a result, he has had to cut back on certain incidentals. Mr. LaBonte's adopted mother lives alone in her own home, but he prefers not returning to live with her.

Evidence introduced at the hearing indicates that it would be difficult to find housing in the private rental market in Syracuse, New York, which has similar rent levels and the same amenities as Harrison House and Townsend Tower. There is public housing available for low income tenants in Syracuse which, in general, has similar amenities to those found at Harrison House and Townsend Tower, but the waiting time to move into such housing is between two and four years.

## III.

Plaintiffs seek, pursuant to § 212 of the 1974 Act, to compel HUD to reimburse

all past and present tenants of Harrison House and Townsend Tower for rents paid in excess of 30% of their incomes from February 18, 1975, to September 30, 1977.

Plaintiffs are members of the national class action which was certified in *Underwood v. Hills, supra.* Since final judgment was entered by the district court in *Underwood*, plaintiffs' claim for relief under the 1974 Act is *res judicata. Underwood* is presently on appeal, but it now appears likely that an out-of-court settlement will be reached in that case. The Court has been advised that a Memorandum of Understanding for Settlement has been entered into by the parties in *Underwood* and certain other actions brought under the 1974 Act.

Pending the final outcome of *Underwood*, all further proceedings concerning plaintiffs' claim for relief under the 1974 Act will be stayed.

### IV.

 Plaintiffs request, pursuant to § 206 of the 1977 Act, a preliminary injunction directing HUD to determine the initial operating expense levels for Harrison House and Townsend Tower on or before April 12, 1978, and to begin making operating subsidy payments to these two projects, on or before May 1, 1978, and to make such payments retroactive to October 1, 1977.

The Court believes that this claim for relief is premature. In the 1977 Act, Congress directed HUD to determine the initial operating expense levels for all § 236 projects by no later than 180 days after the date of enactment (October 12, 1977). This 180–day period has not yet expired. (It will expire on April 10, 1978). Therefore, HUD has not violated any legal duty owed to the plaintiffs under the 1977 Act, and plaintiffs do not, at this time, have a valid claim for relief under this statute. The district court

in *Taylor v. Harris*, No. 4–75 Civ. 640 (D. Minn. March 10, 1978) recently reached the same conclusion. The court in *Taylor* stated:

The court finds that plaintiff's claim for injunctive relief is premature under the terms of the 1977 Act. When Congress enacted the 1977 Act, it made mandatory, as of October 1, 1977, the payment by HUD of operating subsidies to Section 236 projects. However, recognizing that HUD would have to make calculations of initial operating expense levels for all such projects nationwide and then determine how to allocate the limited supply of available funds to those projects, Congress allowed HUD a 180 day period within which to make the calculations required prior to the making of any payments. Until the expiration of this 180 day period, plaintiff lacks a basis for seeking relief under the 1977 Act.

*Slip op.* at 4–5.

This Court recognizes that the plaintiffs in the present case are asking for an Order directing HUD to begin making payments at a date after the expiration of the 180-day period. However, the Court is of the opinion that it would be inappropriate to make such an Order at this time. While Congress gave HUD not more than 180 days to determine the initial operating expense levels for qualifying projects, it did not require HUD to begin making payments on the 180th day or any other specified date.[1] Of course, it would violate Congressional intent if HUD should fail to implement the program within a reasonable time after April 10, 1978, but this Court will not presume that HUD will fail to perform its statutory duty.

In addition, even if the Court were to order HUD to begin making payments on a specific date after April 10, 1978, it has no means of determining the size of payments

---

1. This conclusion is not inconsistent with those cases which ordered relief, under the 1974 Act, retroactive to February 18, 1975 (the date by which HUD was to establish the initial operating expense levels for qualifying projects). *See Abrams v. Hills, supra; Underwood v. Hills, supra.* This Court concludes that, while HUD is not necessarily required to have the operating subsidy program, under the 1977 Act, fully implemented by April 10, 1978, it still has the obligation to make retroactive payments to the extent funds are available. Under the 1977 Act, payments will be retroactive to October 1, 1977 (the effective date of the Act).

HUD should be ordered to make. The Court rejects plaintiffs' suggestion that HUD be ordered to make payments in the full amount by which the utility costs and property taxes of the projects in question exceed their initial operating expense levels. In view of the limited funds available to implement this program, it is highly probable that not all projects will receive the entire amount of assistance payments for which they would be eligible. The Court is of the opinion that HUD should be given an opportunity to determine the most equitable means to implement this program on a nationwide basis.

Those cases in which courts ordered HUD to make payments under the 1974 Act are distinguishable from the present case. *See, e. g., Abrams v. Hills, supra; Underwood v. Hills, supra; Gertsch v. Hills, supra; Dubose v. Hills, supra; Ross v. Community Services, Inc., supra.* First, the court orders in those cases were made after the expiration of the 180-day period which HUD was given to establish the initial operating expense levels. Second, HUD took the position, under the 1974 Act, that it was not required to implement the operating subsidy program while HUD acknowledges that, under the 1977 Act, it is obligated to put the program into effect. There is no indication that HUD will fail to implement the provisions of the 1977 Act.

A preliminary injunction should be issued only if the plaintiffs have made

> a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and a* balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750 (2d Cir. 1977); *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976); *Sonesta International Hotels Corporation v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973).

Since plaintiffs do not, at this time, have a valid claim for relief under the 1977 Act, they have established neither probable success on the merits nor sufficiently serious questions going to the merits to make them a fair ground for litigation.

While the Court bases its denial of injunctive relief primarily on the ground that plaintiffs' claim lacks legal merit, the Court also questions whether plaintiffs have made a sufficient showing of irreparable harm to warrant the issuance of an injunction in the circumstances of this case. The impact of the rent increase on Mrs. Moorehead is cushioned by the fact that she has substantial savings in the bank from which she can draw to meet her needs. Mr. LaBonte's situation is somewhat more serious, since he does not have any savings, and he must, therefore, pay the rent increase out of an already tight budget. However, the Court recognizes the fact that Mr. LaBonte does have the option of living with his adopted mother (although he prefers not doing so).

The Court realizes that some tenants, such as Mr. LaBonte, will suffer a certain degree of financial hardship as a result of the rent increase, and it is also conceivable that some tenants may face eviction as a result of their inability to pay the increased rental charge. While the Court is sympathetic to the plight of such tenants, it must also consider the harm to HUD that would result from the issuance of an injunction at this time. HUD has the obligation of determining the best means of implementing the operating subsidy program on a nationwide basis with a limited amount of funds, and HUD's efforts to do so would be disrupted if this Court and other courts around the country were to order HUD to implement the program immediately.

As of this time, HUD has not violated any legal duty owed to the plaintiffs under the terms of the 1977 Act. If HUD had violated a legal duty, the balance of hardships in this case might very well be different because, in such circumstances, virtually no weight could be given to the potential disruption of government operations.

While the Court believes that plaintiffs' claim for relief based upon the 1977 Act is premature, it acknowledges that plaintiffs may have a valid cause of action after April 10, 1978, if HUD fails to implement the operating subsidy program within a reasonable period of time after such date or if HUD implements the program in an arbitrary or irrational manner.

## V.

 Plaintiffs also request a preliminary injunction to rescind the rent increase approved by HUD and the State Commissioner. They seek the immediate rescission of the entire rent increase, and after a determination can be made as to what portion of the rent increase is attributable to increased utility costs and property taxes, they seek rescission of the portion attributable to these two factors.

As a general rule, the approval by HUD of a rent increase at a federally assisted housing project is a matter committed to agency discretion and is, therefore, not subject to judicial review.[2] *Grace Towers Tenants Association v. Grace Housing Development Fund Co., Inc.*, 538 F.2d 491, 496 (2d Cir. 1976); *Harlib v. Lynn*, 511 F.2d 51, 56 (7th Cir. 1975); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 302–04 (2d Cir. 1971); *Hahn v. Gottlieb*, 430 F.2d 1243, 1249–51 (1st Cir. 1970). However, judicial review may be warranted "in those rare cases where . . . [HUD] has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." *Hahn v. Gottlieb, supra,* 430 F.2d at 1251. See also *Grace Towers Tenants Association v. Grace Housing Development Fund Co., Inc., supra,* 538 F.2d at 496; *Langevin v. Chenango Court, Inc., supra,* 447 F.2d at 303.

Plaintiffs contend that HUD violated its statutory duty under the 1974 and 1977 Acts by approving the rent increase prior to making operating subsidy payments to the housing projects in question. There is no statutory support for plaintiffs' position. Section 236 of the National Housing Act, as amended by the 1974 and 1977 Acts, does not require HUD to consider the eligibility of a project for operating subsidies before approving a rent increase. One court, considering this question after the adoption of the 1977 Act, has so held. *Taylor v. Harris, supra, slip op.* at 7. Two other courts have reached the same conclusion on the basis of the 1974 Act. *Johnson v. U. S. Department of Housing and Urban Development,* Civ.No. 76–979 (S.D.Fla. January 20, 1977); *Ross v. Community Services, Inc., supra,* 396 F.Supp. 278. The court in *Ross* stated:

Nowhere does it appear in the Act that approval of a rent increase must await a determination whether the project qualifies for an operating subsidy. Under Subsections (f)(3) and (g), HUD should act within a reasonable time after a request for a subsidy is made but not necessarily before an increase is approved. 396 F.Supp. at 283.

The Court believes that this conclusion is reinforced by the fact that, in the 1977 Act, Congress gave HUD 180 days to determine the initial operating expense levels for all qualifying projects. If plaintiffs' position were accepted, it would mean that HUD could not approve rent increases for this 180-day period. The Court does not believe that it was the intent of Congress to suspend HUD's authority to approve rent increases for this time period.

Under the 1974 Act, three courts came to the opposite conclusion from that reached in *Ross* and *Johnson,* and held that, in passing upon a rent increase, HUD is required to take into account the eligibility of a project for operating subsidies. *Gibson v. Harris,* 438 F.Supp. 487 (E.D.Va.1977); *Haas v. Harris,* 436 F.Supp. 279 (D.R.I.1977); *Lefort v. Hills,* Civ.No. 76–0286 (D.R.I. November 19, 1976). However, these courts did not cite explicit statutory authority for their conclusion. Moreover, the situation has changed since these cases were decided. In

---

2. The same would, no doubt, be true with respect to judicial review of the State Commissioner's approval of the rent increase.

rendering their decisions, the courts in *Gibson, Haas,* and *Lefort* assumed that the operating subsidy program would be fully implemented and that the landlords would eventually receive assistance payments to cover the portion of the rent increase that the courts enjoined. The validity of this assumption is now in considerable doubt since only a limited amount of money is available in the reserve fund. This Court does not believe that Congress intended that project owners would have to bear the burden of increased utility costs and property taxes if HUD does not have sufficient resources to completely fund all eligible projects. If project owners are forced to operate on a below cost basis, the projects may become economically unfeasible and be forced to shut down. If this happens, there will be a decrease in rental opportunities for low income tenants.

Plaintiffs also argue that the approval of the rent increase by HUD without the payment of operating subsidies violates due process. The Court fails to see how substantive due process is violated by the approval of a rent increase without the implementation of the operating subsidy program. Furthermore, any procedural due process rights which the tenants may have were satisfied by substantial compliance with the HUD regulations giving them notice and an opportunity to comment on the rent increases.[3] 24 C.F.R. § 401.1 *et seq. See Geneva Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir. 1974); *Dew v. McLendon Gardens Associates,* 394 F.Supp. 1223 (N.D.Ga. 1975).[4]

Plaintiffs further contend that the rent increase was void, because the State Commissioner sent the project owners notice of his determination that the rent increase would be allowed before the increase was approved by HUD. This may have been a technical violation of 24 C.F.R. § 401.6, but it was not prejudicial to the tenants. The rent increase was, in fact, approved by HUD before the date it was scheduled to go into effect. Moreover, there was full compliance with the more significant notice and comment provisions of 24 C.F.R. §§ 401.1–401.5. Courts have refused to invalidate rent increases where there have been only technical violations of HUD regulations which did not prejudice the tenants. *Tatro v. Harris,* Civ.No. H–77–69 (D.Conn. March 1, 1977); *Dew v. McLendon Gardens Associates, supra,* 394 F.Supp. at 1236.

Hence, plaintiffs' claim to rescind the rent increase lacks legal merit. They, therefore, have failed to satisfy the first part of the test for granting injunctive relief—probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. Injunctive relief is denied primarily for this reason, but the Court observes that the hardships in this case are not all on one side. While, no doubt, some low income tenants will experience a certain degree of financial hardship as a result of the rent increase, the project owners will, likewise, face financial problems if the rent increase does not go into effect. The State Commissioner, in approving the rent increase, found that the increase was needed to enable the project owners to meet all payments which they were required to make by the New York State Private Housing Finance Law.

Finally, the Court feels that it is unnecessary to consider plaintiffs' motion for class certification. Since plaintiffs' other claims for relief have been denied, class certification will also be denied.

Accordingly, plaintiffs' motion for a preliminary injunction is denied in all respects. Plaintiffs' motions for summary judgment and class certification are also denied.

3. It is questionable whether even these procedures are constitutionally required. *See Grace Towers Tenants Association v. Grace Housing Development Fund Co., Inc., supra;* Langevin v. Chenango Court, Inc., supra.

4. For reasons similar to those considered with respect to HUD, the Court rejects plaintiffs' argument that either the State Commissioner or the project owners violated a duty to the tenants under the 1974 and 1977 Acts or violated the tenants' due process rights.

Plaintiffs' claim for relief under the Housing and Community Development Act of 1974 is stayed pending the outcome of *Underwood v. Hills, supra.* Plaintiffs' claim for relief under the Housing and Community Development Act of 1977 is dismissed without prejudice to the commencement of a new action after April 10, 1978.