Mina FEIR

v.

CARABETTA ENTERPRISES, INC., et al.

Gloria HILL

v.

CARABETTA ENTERPRISES, INC., et al.

Civ. Nos. H–77–379, H–77–416.

United States District Court, D. Connecticut.

Oct. 26, 1978.

Mary A. Conklin, Conn. Legal Services, Meriden, Conn., Norman K. Janes, Dennis J. O'Brien, Conn. Legal Services, Willimantic, Conn., Carolyn Kone, The Technical Assistance Project, Inc., New Haven, Conn., for Mina Feir.

Michael Susman, Christine S. Vertefeuille, Susman & Duffy, New Haven, Conn., for defendants.

David A. Pels, Conn. Legal Services, Waterbury, Conn., Dennis J. O'Brien, Conn. Legal Services, Willimantic, Conn., for plaintiff Gloria Hill.

## RULING ON PENDING MOTIONS

BLUMENFELD, District Judge.

In this consolidated action, tenants of two housing projects subsidized by the federal government under section 236 of the National Housing Act, 12 U.S.C. § 1715z–1, challenge the imposition of an increase in the amount they must pay for electricity costs for the use of air conditioners. The named plaintiffs, and the class they seek to represent, claim that the imposition of the increased electricity charge by the managers and owners of the apartments (the "private defendants") and the approval of the charge by the Secretary of the United States Department of Housing and Urban Development (the "federal defendant") violated applicable federal regulations, contractual agreements, and the equitable principal of unjust enrichment.

Plaintiffs seek declaratory and injunctive relief to compel the defendant Secretary of HUD to rescind the increase in the electrical usage charge and to prohibit the private defendants from imposing the increased charge. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331, 1337, 1361, and 2201–02. The private defendants are joined as necessary parties under Rule 19 of the Federal Rules of Civil Procedure.

The *Hill* and *Feir* cases were consolidated by order of this court on September 26, 1977. The cases are now before the court on (1) plaintiffs' motions for class certification, (2) motions to dismiss or for summary judgment filed by the private and federal defendants, and (3) the private defendants' motion for protective order and/or objection to discovery.

The housing projects involved here—Deerfield Gardens in *Hill* and the Silver Pond Apartments in *Feir*—are both managed by defendant Carabetta Enterprises, Inc. The Deerfield Gardens are owned by defendant Deerfield Realty Co., and the Silver Pond Apartments are owned by defendant Silver Pond Realty Co. Both housing projects receive interest reduction payments on their mortgages under section 236 of the National Housing Act, 12 U.S.C. § 1715z–1. The savings realized from this federal subsidy are passed on to the tenants, who are low-income families, in the form of reduced rental payments. As a condition for receiving the benefits of the section 236 program, each project owner entered into a regulatory agreement with the Secretary of HUD whereby the owner agreed to comply with specific HUD requirements concerning management and operation of the project. In addition, all section 236 projects are subject to regulations formally promulgated by the Secretary of HUD. 24 C.F.R. §§ 236 *et seq.*

Plaintiffs in *Hill* and *Feir* have pleaded several causes of action arising out of the imposition of the increased electricity charge for air conditioner use at Deerfield Gardens and Silver Pond Apartments. Since these causes of action are grounded in a variety of acts and omissions by the defendants, I will first set out the factual background of each electricity charge increase.

### Factual Background

In *Feir,* No. 77–379, plaintiff Feir and members of the class she seeks to represent are tenants who own air conditioners at Silver Pond Apartments. As tenants there, they entered into a lease agreement which provides that the tenants shall pay a utility charge for air conditioners in the amount of $5 per month for June, July, August, and September. On April 13 and April 22, 1977, defendant Carabetta Enterprises, Inc. notified the tenants at Silver Pond Apartments that it was increasing the electricity charge for use of air conditioners from $20 per season payable at $5 per month, to $45 per season payable in one lump sum on May 31, 1977. The notice stated that if the increased charge was not paid, the tenant's air conditioner would be removed and an installation fee would be assessed if the charge was thereafter paid. On April 25, 1977, plaintiff Feir through her representative contacted the federal defendant Secretary of HUD concerning said increase. On May 6, 1977, the manager of Silver Pond Apartments, defendant Carabetta, wrote a letter to the federal defendant requesting that the electricity charge for the use of air conditioners be increased to $45 per season. On June 3, 1977, the Secretary of HUD approved the private defendants' requested increase.

In *Hill,* No. 77–416, plaintiff Hill and members of the class she seeks to represent are tenants who own air conditioners at Deerfield Gardens. Each of the tenants entered into a lease agreement with the private defendants which provides that in addition to the monthly rent, the tenants shall pay a utility charge for the electrical current "used or estimated to be used" for "additional equipment . . . such as . . . air conditioners." On April 13 and April 20, 1977, defendant Carabetta notified the tenants of Deerfield Gardens by mail that it was increasing the electricity charge for use of air conditioners from $20 per season (established the previous year by letter of April 20, 1976) to $45 per season payable in one lump sum on May 15, 1977. In late April of 1977, plaintiff through her representative wrote the federal defendant concerning said increase. On May 6, 1977, the manager of Deerfield Gardens wrote a letter to HUD requesting approval of the $25 increase. The federal defendant approved the increase on June 3, 1977.

## Discussion

Plaintiffs in *Hill* and *Feir* raise identical claims alleging that the increased electricity charge in each case is illegal. Plaintiffs argue on four separate grounds that the private defendants should be prohibited from imposing the increase. First, plaintiffs claim that the utility charge increase is invalid because the private defendants failed to comply with HUD regulations at 24 C.F.R. § 401 *et seq.*, which govern increases in rents at HUD-subsidized projects. Second, plaintiffs contend that the private defendants failed to comply with the regulations at 24 C.F.R. § 450.4(d), which concern lease modifications. Third, plaintiffs allege that the electricity charge increase is void because the private defendants failed to comply with provisions of the Regulatory Agreement signed by HUD and the private defendants. Fourth, plaintiffs allege that the private defendants have been unjustly enriched because they were permitted by HUD to charge the plaintiffs twice for the same electricity costs. In addition, plaintiffs in both cases have also raised a Fifth Count in their complaints claiming that HUD approval of the increase constitutes an abuse of HUD's discretion and is contrary to law.

■ The private defendants and federal defendant have filed a motion to dismiss or for summary judgment. Since evidence was presented at a hearing on this motion on May 8, 1978, and since both parties rely on affidavits and raise matters outside the pleadings, this motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b).

■ Before turning to the substantive issues involved in defendants' motions for summary judgment, it is first necessary to decide a motion relating to the parties' discovery rights. In the hearing of May 8, 1978, this court granted the plaintiffs an additional opportunity for discovery on the condition that all discovery be complete and an affidavit based on that discovery be filed by May 25, 1978. Plaintiffs did not send interrogatories to the defendants until May 23, which clearly did not leave time for a response by the defendants and the filing of an affidavit based on that response by the 25th. The private defendants refused to answer the interrogatories and moved for a protective order and/or objection to discovery on the ground that the plaintiffs had forfeited their discovery opportunity. I am in agreement with the defendants. By the time of the May 8 hearing, plaintiffs had previously had several months in which to conduct discovery. The case was nearly a year old. Time was considered to be of the essence, and the attorney for the plaintiffs acknowledged this fact when the attorney agreed to the court's timetable.

Furthermore, the information sought by plaintiffs' interrogatories is not material to the issues to be decided on defendants' motions for summary judgment. As the discussion *infra* will demonstrate, on the present state of the record there is no dispute as to any material question of fact and the defendants are entitled to judgment as a matter of law. Thus the principle that cases ought to be decided on the merits and not on procedural technicalities is not impaired by denying further discovery to the plaintiffs here. The private defendants' motion that the plaintiffs' discovery not be had is granted.

Having resolved the above matter, I now proceed to discuss in turn each of the theories raised by plaintiffs for invalidating the utility charge increase at Deerfield Gardens and Silver Pond Apartments.

### 1. Applicability of 24 C.F.R. § 401 et seq.

Plaintiffs allege that the federal regulations at 24 C.F.R. § 401 *et seq.* are applicable to the $25 increased charge for air conditioner usage imposed by the private defendants. The 401 regulations, entitled "Procedures for Requesting Increases in Maximum Permissible Rents for Certain Subsidized Projects," specify the procedure for tenant participation in the process of owner application to HUD for approval of an increase in rents. The owner of the

federally subsidized housing project must give the tenants 30 days' notice of a proposed application to HUD for a rent increase; during the 30-day period, the tenants may comment directly to HUD or to the owner of the project concerning the proposed increase. 24 C.F.R. § 401.2. The tenants must be given an opportunity to examine various financial materials to be submitted to HUD in support of the application for a rent increase. *Id.* At the end of the 30-day period, the owner files its formal application sending further material to HUD, including evaluation of the tenants' comments and appropriate certifications. 24 C.F.R. § 401.4.

The private defendants concede that they did not formally comply with all of the requirements of 24 C.F.R. § 401. They contend, however, that these regulations are inapplicable to an increase in electricity charges attributable to air conditioners. Thus the deciding issue here is strictly a legal one: whether an increase in air conditioner charges is a "rent increase" within the terms of 24 C.F.R. § 401.

In support of their contention that the air conditioner charges are "rent increases," plaintiffs quote the following paragraph of the lease agreements signed by the tenants in both *Hill* and *Feir*:

> "Landlord shall not collect charges for . . . utilities in addition to monthly rent, except that any additional equipment used by the Tenant such as . . air conditioners . . . shall entitle the Landlord for additional payment for the current used or estimated to be used for such equipment and Tenant shall pay such amount each month with the rental payment as *additional rent.*" (Emphasis added).

Plaintiffs argue that because the air conditioner charges are referred to in the lease as "additional rent," the charges are "rent" for purposes of the regulations at 24 C.F.R. § 401.

■ The fact that the lease agreement refers to the air conditioner charges as "additional rent" is not evidence that these charges are "rent" within the meaning of the 401 regulations. It is common for a lease to describe all extra charges paid by the tenant as "additional rent." The Department of Housing and Urban Development, which issued the 401 regulations, does not consider the air conditioner charges as rent for purposes of these regulations. Testimony of Peter Barkett, Chief Loan Management Branch, Department of HUD, Hartford, Connecticut, Hearing of May 8, 1978. A government agency's interpretation of its *own* regulations must be given great weight. *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *INS v. Stanisic*, 395 U.S. 62, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). The United States Supreme Court stated in *Larionoff, supra* at 872, 97 S.Ct. at 2156,

> "In construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1213, 89 L.Ed. 1700 (1945)."

■ In the instant case, HUD's interpretation of its regulations is manifestly reasonable. The air conditioner charges do not have those characteristics of the concept of rent sufficient to invoke the procedural and substantive protections of the 401 regulations.[1] Unlike rental payment for the occupancy of space, air conditioner charges are applicable only to self-selected tenants.

---

1. It is well recognized that a lease agreement not only conveys a leasehold as a conveyance of an interest in land, but also may impose contractual obligations on the parties to the lease. *See, e. g., In re Barnett*, 12 F.2d 73 (2d Cir.), *cert. denied sub nom., United Cigar Stores v. Rayher*, 273 U.S. 699, 47 S.Ct. 94, 71 L.Ed. 846 (1926); *In re Cheney Bros.*, 12 F.Supp. 605 (D.Conn.1935); *American Brake Shoe & Foundry Co. v. New York Rys. Co.*, 278 F. 842, 843 (S.D.N.Y.1922) ("there was a present demise [the leasehold estate], the legal consequences of which are not affected by the executory covenants as to furnishing heat, electric current, etc.").

While the tenant faced with a rental increase must either pay the increase or leave the apartment, the tenant faced with an increased air conditioner utility charge can choose to forego that extra utility. The gravity of interest of the tenants in the former situation is much larger, and therefore in much greater need of protection, than in the latter situation. Thus it is quite reasonable that the extensive safeguards of section 401 were not meant to apply in the latter situation, where a landlord seeks HUD approval for a routine utility charge increase. Since I find HUD's interpretation of its regulations reasonable, I hold that the section 401 regulations do not apply to the utility charge increases in controversy in *Hill* and *Feir*.

2. *Applicability of 24 C.F.R. § 450(d)(4)*

Plaintiffs also allege that the $25 utility charge increase is illegal because the private defendants failed to comply with HUD regulations at 24 C.F.R. 450 *et seq.* These regulations, entitled "Evictions From Certain Subsidized and HUD-Owned Projects," protect tenants of federally subsidized housing by limiting the reasons for which tenants may be evicted and by prescribing detailed procedures for terminating the lease and proceeding with eviction. The section of the regulations which deals with the termination notice contains a sub-part entitled "Modification of rental agreement." 24 C.F.R. § 450.4(d). This sub-part requires a landlord to take the following steps before modifying the terms of any lease: (1) obtain prior approval of HUD; (2) serve the tenant with notice of the modification of the lease 30 days prior to the end of the lease term; and (3) tender to the tenant a revised rental agreement or an addendum revising the existing rental agreement. *Id.* The tenant then has two choices: accept the modification by executing the revision; or give the landlord notice that he or she intends to terminate the tenancy. *Id.*

It is not disputed that the private defendants in both *Hill* and *Feir* did not formally comply with the section 450.4(d) require-ments for modification of a lease when they imposed the $25 increase in the utility charge for air conditioner use. The private defendants contend, however, that the increase was not a "modification" within the intent of these regulations. Whether the regulations at 24 C.F.R. § 450.4(d) are applicable to the increase in controversy here is a question of law which this court can decide on a motion for summary judgment.

■ In deciding this issue it is necessary to discuss the *Hill* and *Feir* cases separately because the lease agreements in the two cases differ in a manner significant to the issue at hand. In *Hill*, the relevant portion of the lease agreement states that

"any additional equipment used by the Tenant such as freezers, larger or additional refrigerators, air conditioners, etc. shall entitle the Landlord for additional payment for the current used or estimated to be used for such equipment and the Tenant shall pay such amount each month with the rental payment as additional rent. Without limitations, the following utility charges shall be made:
a. Additional refrigerator: $4.00 per month
b. Free standing freezer: $4.00 per month."

As can be seen, a specific amount for the utility charge for air conditioners is not set out in the *Hill* lease. In contrast to the treatment of charges for an additional refrigerator or a freezer, which are specified, it is clear that the lease contemplates changes in the electricity fee for air conditioners. The lease permits the landlord to charge tenants for "additional payment for the current used or estimated to be used" for air conditioners.

In 1976, the year prior to the instant controversy, the landlord notified the *Hill* tenants by mail that the utility charge for air conditioners would be $20 per season. In 1977, the landlord notified the tenants, again by mail, that the charge would be increased to $45 per season. Since the *Hill* lease agreement contemplates a varying charge for air conditioner use, this increase did not change or modify any of the terms

of that agreement. There being no modification, the provisions of 24 C.F.R. § 450.4(d) are inapplicable, and defendants' failure to comply with those regulations is not actionable.

The lease agreement in *Feir* presents a different situation. The agreement in that case is identical to the one in *Hill* quoted above with one important difference: the *Feir* lease *does* specify a utility charge for air conditioners. That is, in addition to specifying utility charges for an additional refrigerator and for a freezer, the lease also states that a monthly $5 fee for June, July, August and September will be charged for air conditioner use. Thus, when the private defendants in *Feir* increased the air conditioner charge to $45 for the season, they did change that provision in the lease. The issue here, then, is whether this change is a "modification" for purposes of the HUD regulations at 24 C.F.R. § 450.4(d).

HUD does not consider an increase in the air conditioner charge to be a "modification" within the terms of its regulations at § 450.4(d). *See* Testimony of Peter Barkett, *supra*, Hearing of May 8, 1978. The federal defendant argues in its brief that section 450.4(d), which is included under the subheading "termination notice," was intended to give protection to tenants who would face the consequences of eviction if they did not go along with the modification. Once again, HUD's interpretation of its own regulations must be given great weight. *See* discussion *supra*.

 HUD's interpretation is supported by a reading of 450.4(d). That section deals with modifications of a lease which leave the tenant with no other option but to accept the modification or terminate the tenancy. In the instant case, however, the tenants can accept the new terms and pay the $25 increase, or they can choose not to use an air conditioner at all. Thus the tenants are not automatically forced to terminate their tenancy if they do not want to pay the increased utility charge.[2] I therefore accept HUD's interpretation of its own regulations and hold that the $25 increase in the charge for air conditioner use in *Feir* was not of such consequential character as to constitute a "modification" for purposes of 24 C.F.R. § 450.4(d). Defendants' non-compliance with those regulations is, consequently, not actionable.

### 3. Violation of the Regulatory Agreement

 Plaintiffs also claim that the $25 utility charge increase should be voided on the ground that it violates Paragraph 5 of the Regulatory Agreement between the owner of the project and HUD. Prior to the construction of apartment dwellings subsidized by HUD, HUD and the owner-developer of the project execute a Regulatory Agreement containing the terms under which HUD will subsidize the project. Paragraph 5 of the Regulatory Agreement signed by the project owners in *Feir* and *Hill* provides:

"Upon prior written approval of the Commissioner, the Owners may charge to and receive from any tenant such amounts as from time to time may be mutually agreed upon between the tenant and the Owners for any facilities and/or services which may be furnished by the Owner or others to such tenant upon his request, in addition to the facilities and services included in the approved Rental Schedule."

The plaintiff tenants in *Hill* and *Feir* allege that the private defendants violated the terms of this agreement by failing to obtain prior written approval from HUD before imposing the utility charge increase.

---

**2.** The tenants in *Feir* were not threatened with eviction if they did not pay the increased utility charge. Rather, the landlord notified the tenants that it intended to remove the air conditioners of those tenants who had air conditioners but refused to pay the increase.

It is interesting to note that the tenants in *Hill* were impliedly threatened with eviction for nonpayment of the utility increase. There the

landlord threatened to deduct the charge from the next month's rent; thus the next month's rent would be "past due," which is grounds for eviction. However, as discussed *supra*, the lease in *Hill* allowed for an increase in air conditioner charges, and therefore the increase did not constitute a "modification" of the lease agreement under any definition of that term.

The defendants contend that the tenants do not have standing to claim a violation of the provisions of the Regulatory Agreement since the tenants are not parties to the Agreement. I do not have to reach the standing question [3] since, on the basis of the undisputed facts here, I find that the claimed violation of the Regulatory Agreement was de minimus and not prejudicial to the plaintiffs and therefore would not justify voting the utility charge increase.

It is undisputed that the private defendants notified the tenants in *Hill* and *Feir* that the increased charges would be due on May 15 and May 31 respectively. It is also undisputed that HUD's written approval of the increase occurred on June 3, 1977. Since the written approval from HUD occurred after the imposition of the additional charges, this was a technical violation of Paragraph 5 of the Regulatory Agreement; however, no harm to the tenants resulted from this violation. The utility charge increase in *Hill* and *Feir* was intended to cover the costs of providing the additional electricity required to operate the tenants' air conditioners during the months of June, July, August, and September. Given the fact of HUD approval at the beginning of the summer, there was no prejudice to the plaintiffs here. At worst, some tenants might have paid the $25 increase a few days before June 3, when they would have been required to do so under the Regulatory Agreement. Since by paying early, the interest a tenant would have lost would

amount to less than ten cents,[4] the effect of the alleged violation was de minimus. Plaintiffs might have established redressable harm if any of the tenants had been forced to remove their air conditioners prior to June 3 for nonpayment or if any tenant had been evicted prior to June 3 for nonpayment, but plaintiffs do not allege, and the undisputed facts do not reveal, any such occurrences.

4. *Unjust Enrichment*

In the spring of 1977, before the utility increases in controversy here were imposed, the owners of the projects in *Hill* and *Feir* secured approval from HUD for general rent increases based on increased electrical expenses and other costs. Those rent increases were imposed on March 1, 1977 and April 1, 1977, in *Feir* and *Hill* respectively. The *Feir* and *Hill* plaintiffs allege in their complaints that these general rent increases compensated the project owners for electrical costs due to air conditioner use, and therefore when the owners later imposed the special utility charge for air conditioner usage on June 3, 1977, they were collecting twice for the same expense. The essence of the plaintiffs' allegation is that the generalized rent increases in the spring of 1977 were based upon figures for electricity expenses submitted to HUD which did not separate out electricity expenses attributable to air conditioners, for which the owners are reimbursed by the tenants.

---

3. Whether tenants in a section 236 housing project have standing to claim a violation of the provisions of the Regulatory Agreement between the project owner and HUD is a question which has not been decided in the Second Circuit. In general there is little case law on the issue.

Defendants cite *Fenner v. Bruce Manor, Inc.*, 409 F.Supp. 1332 (D.Md.1976), in which the court held that section 236 housing tenants are not third-party beneficiaries of the Regulatory Agreement and therefore have no enforceable interest in the agreement. The *Fenner* court found no indication in the National Housing Act or in the facts of that case that HUD, in its dealings with the landlord, intended to confer upon tenants an enforceable interest in the Regulatory Agreement. 409 F.Supp. at 1349. However, in view of the legislative purpose behind federally subsidized housing—"to assist

families with incomes so low that they could not otherwise decently house themselves," 12 U.S.C. § 1701t—an argument can be marshalled that the tenants are indeed intended beneficiaries of agreements between the project owners and HUD which are mandated by the National Housing Act. I leave a decision on this issue to another day, when the substantiality of the alleged violation of the Regulatory Agreement will necessitate a full consideration of the issue.

4. The maximum financial harm which could have resulted regarding this claim is that tenants in *Feir* might have paid the $25 increase on May 15, eighteen days before June 3. At eight per cent annual interest, the interest which would have been lost by paying $25 eighteen days early is approximately ten cents.

Two affidavits presented by the defendants establish that the generalized rent increases did *not* compensate the project owners for the expenses attributable to the use of air conditioners. One affidavit is from Peter Barkett, the Chief of HUD's Loan Management Branch in Hartford, Connecticut, who supervised the rent increase procedure which resulted in the specific rent increases involved here. Mr. Barkett stated in his affidavit, and at a hearing before the court on May 8, 1978, that HUD deducts from the owner's expenses the amount which the owner collects from tenants for air conditioner use before HUD decides upon an approved rental figure. Secondly, Michael Fiondella, an independent certified public account, swore in an affidavit that as an accountant for the projects in *Hill* and *Feir,* he subtracts the amount received from tenants for air conditioner charges from the gross electricity bill, which is submitted to HUD in support of an application for a rent increase.

Faced with the above affidavits showing that the private defendants were not being reimbursed twice for the same air conditioning expenses, plaintiffs in their Memorandum in Opposition to the defendants' motions for summary judgment presented a new argument as a basis for their unjust enrichment claim. Plaintiffs' new argument, which is based upon information accompanying the above-mentioned affidavits, is complex and well thought out; however, it does not state a claim of unjust enrichment.

In brief, plaintiffs' new argument is as follows: HUD calculates a project owner's expenses in order to determine what rent the owner can charge. All expenses, except (1) management fee, (2) vacancy losses, and (3) collection losses, are totaled and then are adjusted upward by a factor of 1.108. (That is, $1,000 of expenses are treated as $1,108 for purposes of HUD's calculations.) This adjustment factor is intended to compensate the owner for the three above-mentioned items which were not included as expenses. Only after the total expenses are multiplied by 1.108 are air conditioner charges received from the tenants subtracted. The figure arrived at after subtracting the air conditioner charges (and other special charges) is the figure used to calculate the basic rent which the owner can charge. Thus, following from the above, HUD increases the owner's expenses for air conditioner costs by 110.8 per cent but only subtracts 100 per cent of those costs when arriving at a figure for basic rent. The effect of this, plaintiffs conclude, is that 10.8 per cent of the expenses due to air conditioner usage are spread among *all* of the tenants, even those who do not have air conditioners, who pay for it as a part of basic rent.

■ Even if everything which plaintiffs allege above is true, they have not made out a claim of unjust enrichment.[5] All that the plaintiffs' allegations amount to is a claim that in paying the rent which HUD has determined appropriate, tenants without air conditioners are paying part of the costs attributable to the use of air conditioners by other tenants. Perhaps the tenants who do not have air conditioners might have a complaint regarding this state of affairs, but those tenants are not plaintiffs in this action. The present arrangement not only does not unjustly enrich the project owners, but it actually benefits the plaintiffs—those tenants who have air conditioners—since it spreads part of the air conditioning costs among all of the tenants.

Furthermore, and equally important, the decision of HUD to apply a 1.108 adjustment factor to the air conditioner expenses is an accounting and managerial decision within HUD's sole discretion. As discussed more fully *infra,* the appropriateness of such decisions is not subject to judicial review. *See Grace Towers Tenants Ass'n v. Grace Housing Development Fund Co., Inc.,* 538 F.2d 491, 496 (2d Cir. 1976); *Langevin v. Chenango Court,* 447 F.2d 296, 302–04 (2d

---

5. For this reason, to allow plaintiffs further discovery on their unjust enrichment claim, which they request, would be pointless.

Cir. 1971). For all of the foregoing reasons, summary judgment is granted for the defendants on plaintiffs' unjust enrichment claim.

### 5. Claim against HUD

The plaintiffs' claim against the federal defendant is a generalized one that in approving the utility charge increases in *Hill* and *Feir,* HUD abused the discretion granted it by the National Housing Act. Plaintiffs' claims against HUD can be divided into two parts: (1) that the Secretary of HUD abused her discretion by approving the electricity charge increase despite the fact that the private defendants did not comply with applicable HUD regulations and the Regulatory Agreement, and (2) that the federal defendant abused her discretion by approving the electricity charge increases on the basis of insufficient evidence. *See Feir* Complaint ¶ 54; *Hill* Complaint ¶ 53.

The first of these two claims can be disposed of easily since I have already decided, *supra,* that no applicable regulations were violated and that the effect of the private defendants' violation of the Regulatory Agreement was de minimus. Thus the only issue left to be decided is whether plaintiffs can maintain the second claim listed above.

The Second Circuit Court of Appeals has held that as a general rule, approval by HUD of an increased charge at a federally assisted housing project is an action committed by Congress to agency discretion and is therefore not subject to judicial review. *Grace Towers Tenants Ass'n v. Grace Housing Development Fund Co., Inc., supra* at 496; *see Langevin v. Chenango Court, Inc., supra* at 302–04; *Moorehead v. Harris,* 448 F.Supp. 1214, 1220 (N.D.N.Y. 1978). As the Court of Appeals stated, "it would be most unusual for Congress to subject to judicial review discretionary action by an agency in administering a contract which Congress authorized it to make." *Langevin, supra* at 303. The court has indicated, however, that HUD would not be

immune to judicial review where HUD is claimed to have violated a statutory or constitutional standard. *See Grace Towers, supra* at 496; *Langevin, supra* at 303; *Moorehead, supra* at 1220.

Plaintiffs argue that HUD approved the electricity charge increase even though the evidence before HUD did not justify the increase, and that HUD thereby violated the statutory purpose of "reducing rentals for lower income families," 12 U.S.C. § 1715z–1(a). It is clear that the essence of plaintiffs' challenge is not a statutory one, but rather is one aimed directly at the factual basis of HUD's decision to approve the increased utility charge. As discussed *supra,* the law of this circuit commits such a decision solely to HUD's discretion, not subject to judicial review as to the sufficiency of the evidence upon which the decision is based. Consequently, the federal defendant is entitled to judgment as a matter of law dismissing plaintiffs' claim against it.

For the foregoing reasons, summary judgment is granted on behalf of the federal defendant and the private defendants as to all of the plaintiffs' claims in *Hill* and *Feir.*[6]

SO ORDERED.

---

**6.** Plaintiffs' motions for class certification are now moot in light of this decision. Since plain-

tiffs' claims for relief have been denied, class certification will also be denied.