**GRACE TOWERS TENANTS ASSOCIATION et al., Plaintiffs-Appellants,**

v.

**GRACE HOUSING DEVELOPMENT FUND CO., INC., et al., Defendants-Appellees.**

**No. 173, Docket 75–7214.**

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1976.

Decided June 18, 1976.

---

Thomas N. Rothschild, Brooklyn, N. Y. (East New York Legal Services, Brooklyn Legal Services Corp. A, Igor M. Allbray, Brooklyn, N. Y., on the brief), for plaintiffs-appellants.

Lewis T. Tesser, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellee James T. Lynn as Secretary of the United States Department of Housing and Urban Development.

Sheldon Ostro, New York City (Greener & Ostro, New York City), for defendants-appellees Grace Housing Development Fund Co., Inc., Jacob Underwood and Maria Evans.

Before HAYS, MULLIGAN and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

Plaintiffs-appellants, tenants of Grace Towers and their representative organization the Grace Towers Tenants' Association, appeal from a decision below denying their motion for a preliminary injunction against a 23% rental increase approved by defendant Secretary of Housing and Urban Devel-

opment ["HUD"], and dismissing their complaint on the merits.

Grace Towers consists of two buildings of 84 units each located at 272 Pennsylvania Avenue and 2066 Pitkin Avenue, Brooklyn, New York. The project is federally subsidized with a 3% 40-year Below Market Interest Rate mortgage (BMIR) pursuant to Section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(3), and receives rent supplementation on behalf of 10% of the tenants pursuant to 12 U.S.C. § 1701s. Grace Towers is owned by defendant Grace Housing Development Fund Co., Inc. (hereinafter "Grace HDFC"), a private non-profit housing corporation incorporated for the purpose of providing housing to families of low and moderate income. In order to participate in the section 221(d)(3) mortgage program, Grace HDFC signed the standard regulatory agreement with the Secretary of HUD which precludes the mortgagor from increasing rental charges above the approved rental schedule absent permission from HUD. The agreement provides, in part:

"No increase will be made in the amount of the gross monthly dwelling income . . . unless such increase is approved by the Commissioner, who will at any time entertain a written request for an increase properly supported by substantiating evidence and within a reasonable time shall:

(1) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, . . . over which Owners have no effective control, or

(2) Deny the increase stating the reasons therefore."

In June, 1974, Grace HDFC applied to the Secretary of HUD for the requisite approval of a proposed rental increase. The mortgagor submitted evidence substantiating a deficit operation and on August 1, 1974, HUD approved a rental increase of 23%, effective October 1, 1974. At this time no regulation promulgated by HUD required tenant participation in the agency's decision on a rental increase application.[1]

On August 27, 1974, over a month before the effective date of the approved increase, Grace HDFC notified all tenants of the increase by letter. Grace HDFC also met with tenants during the last week of August and advised them who they should contact at HUD should they desire to speak with officials of the agency. Plaintiffs obtained counsel and a law clerk acting on the tenants' behalf met with George Brown, acting Loan Manager of HUD and another HUD official on September 10, 1974. The tenants' representative was advised that HUD had based the increase approval on materials evidencing a net deficit in the operation of Grace HDFC. Mr. Brown agreed to supply the tenants with the materials submitted by the mortgagor in support of the increase application, making it clear that HUD would appreciate being informed of any fraud or inaccuracies in those materials. A meeting between HUD and a delegation of tenants, together with their counsel, was held on September 20, 1974. At the meeting, HUD officials brought the relevant documents, elaborated upon the factors considered by HUD and reiterated the agency's willingness to reconsider its decision if the tenants submitted evidence indicating any fraudulent or incorrect statements made by Grace HDFC management in the application or substantiating materials. At no time, however, did plaintiffs go beyond mere verbal protestation and avail themselves of the opportunity to submit materials to disprove the justification for the rental increase.

Plaintiffs advance three arguments for reversing the district court's dismissal of their complaint: the procedure employed by HUD denied them their constitutional right

1. Subsequent to the Secretary's approval of the instant rental increase application new regulations were adopted, 24 C.F.R. § 401.1–401.4, which ensure tenants of a section 221(d)(3) project an opportunity to participate in the decision making process on rental increase applications. These regulations are discussed in Part II, *infra*.

to due process of law;[2] HUD regulations which became operative after the effective date of the challenged increase should apply retroactively to void HUD's approval and allow tenant participation in HUD's decision-making process; and, finally, that HUD's approval was based on insufficient evidence. We find none of these claims meritorious.

## I.

■ In *Langevin v. Chenango Court, Inc.*, 447 F.2d 296 (2d Cir. 1971), this court explicitly addressed the issue of the procedural rights of tenants of housing projects receiving federal subsidy pursuant to section 221(d)(3) of the National Housing Act and held that the due process clause of the Fifth Amendment does not guarantee such tenants a right to participate in rental increase applications. *Langevin*, sensitive to the tenants' interests, did suggest certain procedures for HUD to follow before a rent increase is imposed—notice and some form of tenant participation—but clearly stated that however desirable such procedures may be they are not required by the Constitution. As Judge Friendly there noted:

"By leaving rent control in [§ 221(d)(3)] projects to 'a regulatory agreement' between the Secretary and the mortgagor if no Federal, State or local law required more, . . . Congress indicated its belief that a mandatory provision for subjecting all rent increases in such projects to what would amount to a full-fledged public utility rate proceeding, with the expense and delay necessarily incident thereto, might well kill the goose in 'solicitude for the eggs.'"

447 F.2d at 301, *quoting Hahn v. Gottlieb*, 430 F.2d 1243, 1246 (1st Cir. 1970).

Since *Langevin* was decided before the Supreme Court's decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), plaintiffs urge a different result. Those cases, however, only support the applicability of due process protections in instances where there is "a legitimate claim of entitlement." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. 2701, *Sindermann, supra* at 602, 92 S.Ct. 2694. These tenants, although beneficiaries of § 221(d)(3) financed housing, do not have a statutorily created property interest sufficient to sustain such a claim. *See Harlib v. Lynn,* 511 F.2d 51 (7th Cir. 1975). "[T]he purpose of the § 221(d)(3) program was to promote 'the construction of housing by private enterprise,'" *Langevin, supra* at 301, and to accomplish that objective the legislature relegated decisions respecting rent regulation to the experienced discretion of the Secretary. *Id.* These tenants could not reasonably expect that they were to be forever immunized from rent increases; nor, could they legitimately expect an opportunity to participate in a decision-making process which Congress confided to the experienced discretion of the Secretary. Without at least some Congressionally prescribed restrictions on the agency's action or a practice giving rise to a legitimate expectation, we are constrained to find that plaintiffs' interest in the benefit of low-cost housing does not rise above "an abstract need or desire for it. . . ." *Roth supra,* 408 U.S. at 577, 92 S.Ct. at 2709. *Accord, Harlib v. Lynn, supra* at 55; *Paulsen v. Coachlight Apartments Co.,* 507 F.2d 401, 403 (6th Cir. 1974); (applying § 236 of the National Housing Act, 12 U.S.C. § 1715z–1); *People's Rights Organization v. Bethlehem Associates,* 487 F.2d 1395 (3rd Cir. 1973), *summarily aff'g,* 356 F.Supp. 407 (E.D.Pa.1973) (same); *Hahn v. Gottlieb, supra.* *See McKinney v. Washington,* 143 U.S.App.D.C. 4, 442 F.2d 726 (1970). *Contra, Geneva*

---

**2.** Plaintiffs apparently do not press the claim that the National Housing Act confers upon tenants of a § 221(d)(3) project a statutory right to a hearing. Such a claim would, in any event, be unsuccessful. *Harlib v. Lynn,* 511 F.2d 51 (7th Cir. 1975); *Geneva Towers Tenants Organization v. Federated Mortgage In-*

*vestors,* 504 F.2d 483 (9th Cir. 1974); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296 (2d Cir. 1971); *Hahn v. Gottlieb,* 430 F.2d 1243 (1st Cir. 1970). *Contra, Marshall v. Lynn,* 162 U.S.App. D.C. 56, 497 F.2d 643 (1973), *cert. denied,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974).

*Towers Tenants Organization v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir. 1974). *See Marshall v. Lynn,* 162 U.S.App. D.C. 56, 497 F.2d 643 (1973), *cert. denied,* 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974).

Plaintiffs, seeking to escape the applicability of *Langevin,* argue that in *Langevin* the housing project was a private profit motivated venture whereas Grace HDFC, although a private housing corporation, is a non-profit operation which has been financed by extensive aid from state and local sources. While that distinction may be responsive to the observation in *Langevin* that there was insufficient government involvement to invoke the due process clause, 447 F.2d at 301,[3] it hardly obviates the fact, as we have noted, that there is no legitimate claim of entitlement upon which due process protections may attach.

■ We are reinforced in our decision herein, moreover, by the fact that the *ad hoc* procedures employed by HUD substantially afforded the tenants full due process. The tenants were given notice, had an opportunity to inspect data, held meetings with HUD officials, were given reasons for the approval and were invited to submit opposing materials although they failed to do so. HUD, according to plaintiffs' own witness, expressed its readiness to reconsider the increase if shown any inaccuracies in the materials upon which it was based. Even those appellate courts which have found some due process right to exist, whether that right be statutory or constitutional in nature, have rejected as inappropriate a full adversary-type hearing in this context. *See, e. g., Paulsen v. Coachlight Apartments Co., supra* at 403 (statutory right); *Geneva Towers Tenants Organization v. Federated Mortgage Investors, supra*

at 491–93 (constitutional right); *Marshall v. Lynn, supra* at 646 (statutory right).

## II.

■ Plaintiffs next contend that regulations adopted by HUD which became operative subsequent to the effective date of the rent increase should be applied retroactively. Under the new regulations tenants of a § 221(d)(3) project are guaranteed 30 days advance notice of the mortgagor's intention to seek an increase, 30 days in which to inspect and copy materials the mortgagor intends to submit to HUD in advance of their submission, the inclusion of tenant comments in the materials the mortgagor submits, and a copy of a written determination by the agency stating the reasons for approval or disapproval of the increase. 24 C.F.R. §§ 401.1–401.4.

Plaintiffs cite *Thorpe v. Housing Authority,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) for the proposition that "an appellate court must apply the law in effect at the time it renders its decision." (footnote omitted), 393 U.S. at 281, 89 S.Ct. at 526. We question at the outset whether plaintiffs may avail themselves of the general rule enunciated in *Thorpe.* Although the new regulations had been in effect for several months, it does not appear that plaintiffs ever pressed their retroactivity claim before the district court. *Thorpe* speaks to changes of law " 'subsequent to the judgment and before the decision of the appellate court . . . .' " *Id.* at 282, 89 S.Ct. at 526, *quoting United States v. Schooner Peggy,* 1 Cranch (5 U.S.) 103, 110, 2 L.Ed. 49 (1801) (Marshall, *C. J.*), whereas the judgment herein was rendered subsequent to the change. By failing to urge this claim below, plaintiffs may be held to have waived it.

---

**3.** In *Lopez v. Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974), this court found a project similar to Grace HDFC to be subject to the same due process requirements with respect to eviction that apply to a municipal housing authority. *Lopez,* however, specifically left open the question presented here: "[W]hat, if anything, due process requires with respect to rent increases in a project such as this." 498 F.2d at 942. In *Lopez,* a custom of renewal giving rise to " 'mutually explicit understandings that support [a] claim of entitlement to the benefit . . . .' " 498 F.2d at 943, quoting *Sindermann, supra,* 408 U.S. at 601, 92 S.Ct. 2694, was found to exist. The situation is quite different with respect to rental increases which are subject to no similar custom and the regulation of which is confided to the unreviewable discretion of the Secretary. See Part III, *infra.*

*Thorpe,* in any event, does not support plaintiffs' retroactivity argument. While *Thorpe* states the general rule governing the retroactivity of administrative regulations, it also recognizes that exception is made when "manifest injustice" would be a consequence of retroactive application. 393 U.S. at 282, 89 S.Ct. 518. In reasonable reliance upon the rental increase, Grace HDFC has entered service and supply contracts and arranged for the deferral of loan repayment schedules. Retroactive application is inappropriate where there has been such a change of circumstances. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Moreover, because plaintiffs delayed for more than two months after the effective date of the rental increase before initiating this suit, Grace HDFC's reliance on the increase and change of circumstance predicated thereon may be attributed to plaintiffs' dilatory prosecution of this action. Clearly the equities in this case do not warrant retroactive application. *See, Harlib v. Lynn, supra* at 55; *South East Chicago Commission v. Department of Housing and Urban Development,* 488 F.2d 1119, 1122–27 (7th Cir. 1973).

### III.

Plaintiffs' final contention is that the agency's approval was based on insufficient evidence. We do not reach the merits of this claim. In *Langevin, supra,* at 302–304, we held such agency action non-reviewable as it falls within the second exception to reviewability in § 701(a) of the Administrative Procedure Act, 5 U.S.C. § 701(a), as action committed to agency discretion. *See also, Harlib v. Lynn, supra* at 56; *People's Rights Organization v. Bethlehem Associates,* 356 F.Supp. 407, 410–11 (E.D.Pa.), aff'd, 487 F.2d 1395 (3d Cir. 1973); *Hahn v. Gottlieb,* 430 F.2d 1243, 1249–51 (1st Cir. 1970). As in *Langevin,* our finding of non-reviewability herein does not preclude review of questions pertaining to the agency's jurisdiction or compliance with constitutional and statutory demands. *Langevin, supra* at 303–04.

The order of the district court is affirmed.