**Abraham SNYDER, Aaron Jones, Calvin Allen, and Delano Village Tenants Association, Plaintiffs,**

v.

**AXELROD MANAGEMENT COMPANY and U. S. Department of Housing and Urban Development, Defendants.**

**No. 77 Civ. 3217 (HFW).**

United States District Court,
S. D. New York.

May 14, 1979.

Jimmie L. Engram, New York City, for plaintiffs.

Fellner, Rovins & Gallay, New York City, for defendant Axelrod; Wynne B. Stern, Jr., New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant HUD; Barbara L. Schulman, Patrick H. Barth, Asst. U. S. Attys., Vita O. Weiss, Associate Regional Counsel, HUD, Adele Tauber, Atty. Adviser, Region II, HUD, New York City, of counsel.

## OPINION

WERKER, District Judge.

This action for injunctive and declaratory relief was commenced by the plaintiff ten- ants[1] against their landlord, the Axelrod Management Company ("Axelrod"), and the Department of Housing and Urban Development ("HUD") for alleged violations of 42 U.S.C. §§ 1981 and 1983 and the fifth and fourteenth amendments. Having submitted a stipulation of facts,[2] the parties have cross-moved for summary judgment. There being no genuine issue of material fact, the case is ripe for summary judgment.

### 1.

The Delano Village development is a privately constructed and financed seven building, 1799 unit housing project located in upper Manhattan. The seven mortgage notes covering the complex are insured by the Secretary of HUD pursuant to section 220 of the National Housing Act (the "NHA"), 12 U.S.C. § 1715k. In 1974, because the gross rental receipts did not meet expenses, Axelrod defaulted on five of the seven notes. The mortgagee elected under the mortgage insurance contract to assign the five notes and security instruments to the Secretary in exchange for insurance benefits of $12.6 million.

Prior to preemption, Delano Village was subject to the New York City Rent Stabilization Law (the "RSL"), N.Y.C.Admin.Code § YY51–1.0 *et seq., reprinted in* Unconsol. Laws foll. § 8617 (McKinney 1974 & Supp. 1978–1979). Under the RSL, rents in New York City are controlled by the New York City Real Estate Industry Stabilization Association Conciliation and Appeals Board (the "CAB"). N.Y.C.Admin.Code § YY51–6.0.

On June 17, 1975, Axelrod filed an application for rent increases with HUD's New York Area Office, and on July 7, 1975, the requested rent increases were approved.

---

1. The plaintiffs consist of three residents of Delano Village, Abraham Snyder, Aaron Jones and Calvin Lee, and the Delano Village Tenants Association. While the complaint sets forth class action allegations, no motion was ever made to certify the suit as a class action.

2. The stipulation of facts, filed by the parties on Feb. 16, 1979, will be hereinafter cited as "Stip."

At some point between the granting of rent increases and August 27, 1975, representatives of HUD met with the plaintiff Snyder, the president of the plaintiff tenants association, and provided him with a detailed explanation of the necessity for the rent increases.

On October 30, 1975, Axelrod submitted a hardship application for a rent increase to the CAB. No notice of this application was given to the tenants of Delano Village. HUD wrote to the CAB on May 26, 1976 advising it that the Delano Village complex was one of several projects unable to meet operating costs and debt service under the then existing rent structures. HUD advised the CAB that HUD's economic interest in the Delano project had consequently been placed in jeopardy.

On June 29, 1976, the CAB responded to HUD's Area Office, advising it as follows:

[T]he maximum percentage level of increase which could be granted under the Rent Stabilization Law would be 4.2%, based on the assumption that there is no substantial increase between income and expenses during the current period.

. . . [I]n the event the owner qualifies for a greater comparative hardship increase under current provisions of the Rent Stabilization Law, the rent increase granted the owner in any hardship order would be collectible in an amount not exceeding 6% in any one year (above guidelines) with any balance due the owner collectible in succeeding years at a rate similarly not exceeding 6%. The Rent Stabilization Law limits the owner to no more than one hardship order in any 36 month period.

Affid. of Fred W. Pfaender, sworn to Jan. 4, 1979, exh. E., at 2. The maximum rent increase which the CAB would have authorized was less than the jeopardy rent increase approved by HUD.

On August 3, 1976, the Area Office requested HUD's Office of Loan Management[3] to preempt the Delano Village project from the operation of local rent control. After reviewing the Area Office's recommendations and the pertinent financial data, the Office of Loan Management determined that due to increased utility and operating expenses and real estate taxes, the increases approved by the Area Office were justified.

On September 28, 1976, Fred W. Pfaender, the director of the Office of Loan Management, wrote a letter to the New York Housing and Development Administration certifying that the increased rents approved by HUD constituted the minimum amount of rent necessary to meet operating expenses and debt service requirements. On September 29, 1976, Axelrod was notified by Mr. Pfaender that HUD had preempted Delano Village from local rent control. Written notice of HUD's preemption was given to the tenants of Delano Village by Axelrod on October 29, 1976.

HUD's preemption determination permitted Axelrod to increase rents as leases expired until a new monthly shelter rent potential of $387,469 for 1799 units was attained. The preemption determination also limited leases to one year-terms for the duration of the preemption period.

Axelrod gave the tenants of Delano Village notice of the preemption rent increases on May 9, 1977. Approximately 700 tenants executed an acknowledgement of the rent increases.

After HUD approved the rent implementation schedule prepared by Axelrod, the rents were gradually increased. As of February 28, 1979, the total amount of rent being charged for all of Delano Village was $387,453, some $16 below the jeopardy rent level authorized by HUD. Affid. of Edwin S. Sprenger, sworn to April 23, 1979, at ¶¶ 5, 6.

**2.**

Section 220 of the NHA was designed "to aid in the elimination of slums and blighted

---

**3.** The Office of Loan Management is now known as the Office of Multifamily Housing, Management & Occupancy.

conditions and the prevention of the deterioration of residential property . . . ." 12 U.S.C. § 1715k(a). To accomplish this purpose, the NHA established a plan whereby HUD would provide loan and mortgage insurance to private investors financing housing projects in slum clearance and urban renewal areas. 12 U.S.C. § 1715k(b), (d). Should a mortgagor default under the section 220 program, the mortgagee has the right to require HUD to pay it insurance benefits. HUD then acquires the mortgagee's interest in the note and mortgage by assignment, becoming, in effect, the lender. Insurance benefits are paid to the mortgagee out of the General Insurance Fund established by 12 U.S.C. § 1735c.

To preserve the financial viability of and the federal government's financial interest in section 220 projects, HUD is authorized to and did promulgate regulations to minimize the risk of financial default by participating mortgagors. *See* 12 U.S.C. § 1715b, 1715k; 42 U.S.C. § 3535(d). One such set of regulations is 24 C.F.R. pt. 403, subpt. B (1978), which governs unsubsidized federally-insured projects, and which is intended "to preempt all actions of a local rent control board that would impede the implementation of the HUD approved rents or interfere with the collection of rental charges approved by HUD." 40 Fed.Reg. 49318, 49319 (Oct. 22, 1975). Section 403.5 of subpart B provides:

> [HUD] will generally not interfere in the regulation by a local rent control board . . . of rents for unsubsidized projects with mortgages insured or held by HUD. However, HUD will preempt the regulation of rents for such a project when [HUD] determines that the delay or decision of a board, or other authority regulating rents pursuant to state or local law, jeopardizes [HUD's] economic interest in the project.

24 C.F.R. § 403.5 (1978). *See generally* Note, *Pre-emption of Local Rent Control Laws by HUD Regulation,* 45 Fordham L.Rev. 651 (1976). In this action, HUD determined that "the delay of the [CAB] which prevents implementation of the rent increases approved by HUD, will jeopardize [HUD's] economic interest in [the Delano Village] projects." Pfaender affid., exh. G. Accordingly, HUD utilized 24 C.F.R. pt. 403 to preempt Delano Village from RSL and CAB regulation. *Id.*

3.

The first issue before the Court is the scope of judicial review of HUD's determination to preempt. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. . . ." 5 U.S.C. § 702. Judicial review is not available, however, "to the extent that . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

The reviewability of HUD decisions to approve rent increases for housing projects constructed pursuant to section 221(d)(3) of the NHA, 12 U.S.C. 1715*l*(d)(3), which provides for federal subsidies and mortgage insurance, has been addressed by three circuits. The first, second and seventh circuits have held that such agency action is nonreviewable in that it falls within the "committed to agency discretion" exception to reviewability provided by 5 U.S.C. § 701(a). *Grace Towers Tenants Association v. Grace Housing Development Fund Co.,* 538 F.2d 491, 496 (2d Cir. 1976); *Harlib v. Lynn,* 511 F.2d 51, 56 (7th Cir. 1975); *Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 302–04 (2d Cir. 1971); *Hahn v. Gottlieb,* 430 F.2d 1243, 1249–51 (1st Cir. 1970). *See also, People's Rights Organization v. Bethlehem Associates,* 356 F.Supp. 407, 410–11 (E.D.Pa.), *aff'd mem.,* 487 F.2d 1395 (3d Cir. 1973).

For purposes of determining judicial reviewability, the decision of HUD to permit a preemption rent increase for section 220 housing is in my mind no different from a HUD decision to approve a rent increase for section 221(d)(3) housing. Accordingly, the analysis utilized by the courts with respect to determining the reviewability of the latter is equally applicable to determining the reviewability of the former.

The local rent control laws will only be preempted "when [HUD] determines that the delay or decision of the local rent control board . . . jeopardizes [HUD's] economic interest in a [section 220] project . . . ." 24 C.F.R. § 403.1(a). *See id.* § 403.5. In making such a determination, HUD must take into consideration matters such as estimates of future operating costs, estimates of future real estate and other taxes, estimates of vacancy rates, market factors and trends, the cause of and possible remedies for increased operating costs, and the respective abilities of the landlord and tenants to pay for increased expenses. *See Hahn v. Gottlieb*, 430 F.2d at 1249; *Dew v. McLendon Gardens Associates*, 394 F.Supp. 1223, 1234 (N.D.Ga.1975). This "managerial" determination is one more appropriately made by HUD, an agency with experience and expertise in the area, than by the courts.

Other factors pointing to nonreviewability include the fact that Congress authorized HUD to enter into and administer mortgage insurance commitments "upon such terms and conditions as [HUD] may prescribe." 12 U.S.C. § 1715k(b). Congress further empowered HUD to exercise its discretion to require a section 220 mortgagor "to be regulated or restricted as to rents or sales . . . ." 12 U.S.C. § 1715k(d)(2)(A). It is unlikely, then, that Congress, after granting HUD the power to exercise broad discretion, intended to undermine HUD's authority by subjecting its discretionary action to judicial review. *See Langevin v. Chenango Court, Inc.*, 447 F.2d at 303. The conclusion of nonreviewability is also supported by the "need for expedition to achieve the Congressional objective [of eliminating slums and blighted conditions and preventing the deterioration of residential property, 12 U.S.C. § 1715k(a)]" and "the quantity of appeals that would result if [HUD decisions to grant preemption rent increases] were held reviewable."

*See Langevin v. Chenango Court, Inc.*, 447 F.2d at 303.

■ For these reasons, I hold that the decision of HUD to grant a preemption rent increase for section 220 housing constitutes agency action committed to agency discretion. Accordingly, the granting of a preemption rent increase by HUD is not reviewable except to the extent that questions pertaining to HUD's jurisdiction or compliance with constitutional or statutory demands have been raised. *Grace Towers Tenants Association v. Grace Housing Development Fund Co.*, 538 F.2d at 496; *Langevin v. Chenango Court, Inc.*, 447 F.2d at 304. The plaintiffs are not entitled to judicial review of the merits of HUD's decision to grant the preemption rent increase.

4.

In this action, the plaintiffs have not challenged to power of HUD to issue the regulations in question, nor have they argued that the regulations do not preempt conflicting local law with respect to rents. Any such claims would, in any event, fail, for it has been held, with respect to unsubsidized federally-insured housing, that HUD had congressionally delegated authority to promulgate 24 C.F.R. pt. 403 and that 24 C.F.R. pt. 403 takes precedence over conflicting local rent control laws. *Gramercy Spire Tenants' Association v. Harris*, 446 F.Supp. 814 (S.D.N.Y.1977); *Argo v. Hills*, 425 F.Supp. 151 (E.D.N.Y.1977), aff'd mem., 578 F.2d 1366 (2d Cir. 1978); *515 Associates v. City of Newark*, 424 F.Supp. 984 (D.N.J. 1977).[4] *See also City of Boston v. Hills*, 420 F.Supp. 1291, 1298 (D.Mass.1976). Instead, the plaintiffs base their complaint on the allegation that the preemption of Delano Village from regulation under the RSL was invalid because Axelrod did not comply with HUD regulations and because the necessary rent increases could have been obtained under the RSL. In addition, the

---

**4.** The *Gramercy Spire, Argo,* and *515 Associates* cases involved section 207 of the NHA, 12 U.S.C. § 1713. Despite this distinction, these cases are nevertheless applicable to the instant action in that the section 207 program is also a federal mortgage insurance program for unsubsidized housing and is subject to the same preemption regulations, 24 C.F.R. pt. 403, subpt. B, as the section 220 program.

plaintiffs contend that while the HUD regulation may preempt the RSL with respect to levels of rent, it does not do so with respect to the duration of leases.

▮ Plaintiffs claim that Axelrod failed to comply with HUD regulations in two respects. First, although 24 C.F.R. § 403.-6(a) requires simultaneous rent increase applications to HUD and the local rent control board, Axelrod did not submit an application to the CAB until four and a half months after it had filed an application with HUD. Stip. ¶¶ 26, 29. Second, Axelrod failed to comply with CAB procedural rules, as required by an *interim* HUD regulation, 24 C.F.R. § 403.3(a) (40 Fed.Reg. 8190, Feb. 26, 1975), by failing to give the tenants notice of the CAB application.

While the facts support the plaintiffs' claim that HUD violated one of its own regulations, under the circumstances no relief is warranted in this regard. The regulation in issue was merely an interim regulation which was not phrased in mandatory terms:

> The local HUD office shall process a mortgagor's request for approval of increases in the maximum permissible rents . . . . ; The mortgagor *should* simultaneously submit a similar request to the local rent control board following the requirements of the local jurisdiction.

24 C.F.R. § 403.3(a) (40 Fed.Reg. 8190, Feb. 26, 1975) (emphasis added). *Cf.* 24 C.F.R. § 403.6(a) (1978). It should be noted that while the requirement of simultaneous applications was made mandatory in the final regulation, the requirement of compliance with local board rules was deleted. The fact that HUD chose to overlook Axelrod's violations of the interim regulation in processing the preemption application is entitled to some deference. *See American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

Moreover, it is clear that Axelrod's failure to comply with the interim regulation did not violate any substantial rights of the plaintiffs. *See generally* Note, *Violations By Agencies of Their Own Regulations*, 87 Harv.L.Rev. 629 (1974). The requirement of simultaneous applications was intended to permit HUD to proceed expeditiously to determine whether preemption would be necessary in order to protect HUD's financial interests. *See* 40 Fed.Reg. 8189–90 (Feb. 26, 1975). The requirement of giving notice to the tenants of Axelrod's CAB rent increase application was undoubtedly intended to afford the tenants an opportunity to file with the CAB objections to proposed rent increases. Any success the tenants would have had in lowering any requested rent increases would only have strengthened the case for preemption. In addition, it is apparent that the violations of the interim regulation did not in any way affect HUD's decision to preempt. It is undisputed that "[r]egardless of tenant participation before the CAB, the maximum rent increase which the CAB would have authorized was a 4.2% rent increase, which rent increase was less that the jeopardy rent increase approved by HUD." Stip. ¶ 32(a).

▮ The plaintiffs' claim that the necessary rent increases could have been obtained under the RSL and that preemption was therefore unnecessary goes to the merits of HUD's decision to preempt. Consequently, this claim is beyond the scope of judicial review. In any event, the parties stipulated that the maximum rent increase which the CAB would have authorized was less than the jeopardy rent increase granted by HUD.

▮ The plaintiffs contend that the preemption provisions of 24 C.F.R. pt. 403 apply only to local control of maximum permissible rent increases and not to local control of the duration of leases. This contention must be rejected. HUD's power to preempt local rent control encompasses the "regulation of rents." 24 C.F.R. § 403.1(a) (1978). This power necessarily includes the power to limit leases to one-year terms, for limiting the duration of leases is certainly an important means of regulating rents. Moreover, the regulations provide for the

preemption of "*[a]ny* state or local law, ordinance or regulation [that] purports to regulate rents of [unsubsidized, federally-insured] projects for which a determination of preemption has been made . . . ." 24 C.F.R. § 403.1(b) (1978) (emphasis added). HUD will preempt local rent control when it determines that a "delay or decision" of a local rent control board jeopardizes HUD's economic interest in a project. 24 C.F.R. § 403.5 (1978). The comments accompanying the publication of the final regulations provide that the regulations are intended "to preempt *all actions* of a local rent control board that would impede the implementation of the HUD approved rents or interfere with the collection of the rental charges approved by HUD." 40 Fed.Reg. 49318, 49319 (Oct. 22, 1975) (emphasis added). It is clear, therefore, that the preemption regulations are not directed solely at local rent control of the maximum permissible levels of rent increases. Instead, the preemption regulations extend to any local rent control law, regulation or action that would in any way regulate rents. Hence, any CAB decision or any RSL provision concerning the duration of leases that contributed to the further deterioration of the financial situation of Delano Village could have been and was validly preempted by HUD's preemption determination.

### 5.

■ The plaintiffs' final claim alleges a violation of their rights to due process of law. The undisputed facts reveal that they were not afforded an opportunity to participate in HUD's decision to grant a preemption rent increase. While HUD representatives did meet with the plaintiff Snyder, this meeting—which was held to provide the tenants with "a detailed explanation of the necessity for the rent increases"—did not take place until after HUD's New York Area Office had approved the requested rent increases. Stip. ¶ 28. Accordingly, for the reasons set forth in *Gramercy Spire Tenants' Association v. Harris*, 446 F.Supp. 814 (S.D.N.Y.1977); *Argo v. Hills*, 425 F.Supp. 151 (E.D.N.Y.1977), aff'd mem., 578 F.2d 1366 (2d Cir. 1978); and *515 Associates v. City of Newark*, 424 F.Supp. 984 (D.N.J. 1977), I find that the plaintiffs were denied due process of law.

HUD's preempting of the RSL in this action was sufficient governmental action to invoke the due process guarantee. *Gramercy Spire*, 446 F.Supp. at 826; *Argo*, 425 F.Supp. at 157; *515 Associates*, 424 F.Supp. at 993. The RSL, which provides for "a carefully controlled system of rental increases," gave rise to a legitimate expectation on the part of the plaintiffs that their rents would not be increased beyond certain guidelines without due process of law. *Gramercy Spire*, 446 F.Supp. at 826; accord, *Argo*, 425 F.Supp. at 158; *515 Associates*, 424 F.Supp. at 993–94. Thus, when HUD preempted the RSL without providing the plaintiffs an opportunity to be heard, the plaintiffs were deprived of a legitimate property interest without due process of law.[5]

---

5. The *Gramercy Spire, Argo* and *515 Associates* cases, involving section 207 of the NHA, and the instant case, involving section 220 of the NHA, are distinguishable from the section 221(d)(3) cases holding that HUD may authorize rent increases without providing the tenants an opportunity to be heard. *E. g., Grace Towers Tenants Association v. Grace Housing Development Fund Co.*, 538 F.2d 491, 494–95 (2d Cir. 1976); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300–02 (2d Cir. 1971). In addition to federal mortgage insurance, section 221(d)(3) provides for federal subsidies. As a consequence, housing constructed pursuant to section 221(d)(3) is excluded from the ambit of rent control laws such as the RSL. N.Y.C.Admin.Code § YY51–3.0(a)(1)(a), *reprinted in* Unconsol.Laws foll. § 8610 (McKinney Supp.

1978–1979). Since HUD need not take the affirmative step of preempting local law to permit a rent increase for section 221(d)(3) housing, there is insufficient government involvement to invoke the due process clause. *Langevin*, 447 F.2d at 301. Additionally, since tenants in section 221(d)(3) subsidized housing do not have the legitimate expectation of procedural due process against rent increases that tenants in rent stabilized section 220 or 207 housing have by virtue of the local rent control laws, they do not have the same property interest as the latter and are not entitled to the same procedural safeguards. *Grace Towers*, 538 F.2d at 494.

It should be noted that HUD has adopted regulations which presently provide for certain

6.

In accordance with the above, the plaintiffs' motion for summary judgment is granted insofar as it relates to the due process claim. In all other respects, the plaintiffs' motion for summary judgment is denied. The defendants' motions for summary judgment are granted insofar as they relate to the validity of 24 C.F.R. pt. 403 (1978) and Axelrod's compliance therewith and the authority of HUD to preempt local control of the duration of leases. With respect to the due process issue, the defendants' motions for summary judgment are denied.

With respect to the plaintiffs' remedy for the violation of their due process rights, although a full adversary-type hearing is not required, see *Burr v. New Rochelle Housing Authority*, 479 F.2d 1165 (2d Cir. 1973); *Argo v. Hills*, 425 F.Supp. at 158, some type of procedural relief is warranted. Thus, this action is hereby remanded to HUD for further administrative proceedings in which the plaintiffs will be afforded an opportunity to review and comment on or object to Axelrod's application for preemption. After any such comments or objections have been reviewed by HUD, HUD shall issue a written decision continuing, vacating or modifying its preemption order, and setting forth the reasons for its decision.[6] With respect to any future applications for rent increases pursuant to 24 C.F.R. § 403.6 (1978), the plaintiffs shall be given notice of such application as well as an opportunity to review and comment on or object to any materials submitted in support of any such application. After HUD has reviewed the comments and objections, it shall issue a written statement setting forth the reasons for its decision.

HUD is directed to submit a judgment on notice within 20 days after entry of this order.

SO ORDERED.

procedural safeguards for tenants of section 221(d)(3) housing. *See* C.F.R. pt. 401 (1978).

6. *See generally Thompson v. Washington*, 179 U.S.App.D.C. 357, 551 F.2d 1316 (1977).