GRAMERCY SPIRE TENANTS'
ASSOCIATION, Plaintiff,

v.

Patricia Roberts HARRIS, as Secretary of the Department of Housing and Urban Development; The Department of Housing and Urban Development; and Morris Sosnow, Jerrold A. Lieberman, Leonard Schwartz, Individually and as co-partners in 16th Street Associates, Defendants,

and

Patricia Grant, James N. Palik, Rosalyn Rusalem, The Conciliation and Appeals Board and The Housing and Development Administration of the City of New York, Additional Defendants on Counterclaim.

No. 76 Civ. 4028 (WCC).

United States District Court,
S. D. New York.

May 12, 1980.

Maurice A. Reichman, New York City, for plaintiff, and James N. Palik and Rosalyn Rusalem, additional defendants on counterclaim.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants, Morris Sosnow, Jerrold A. Lieberman and Leonard Schwartz, individually and doing business as 16th Street Associates; Neal M. Goldman, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

In a previous opinion, reported at 446 F.Supp. 814, familiarity with which is assumed, the Court remanded this matter to the Department of Housing and Urban Development ("HUD") for a reexamination of defendant 16th Street Associates' ("Associates") application for preemption of local rent control-laws as they apply to Gramercy Spire Apartments ("Gramercy Spire") and the tenants' objections thereto. On remand, HUD reaffirmed its prior determina-

tion that such preemption was necessary in order to ensure the economic viability of Gramercy Spire. Associates now moves for summary judgment pursuant to Rule 56, F.R.Civ.P., on its counterclaim. For the reasons which follow, defendants' motion for summary judgment is granted.

Only a brief review of the factual history of this action, set out in detail in the Court's previous opinion, is needed to explicate the present decision. Gramercy Spire, located at 160 Third Avenue in New York City, is a privately owned and financed apartment building; however, the mortgage on Gramercy Spire, which is held by the Lincoln Savings Bank, is insured by the Secretary of HUD pursuant to Section 207 of the National Housing Act ("NHA"), *as amended*, 12 U.S.C. § 1713. In order to secure the guaranteed mortgage, Associates signed a regulatory agreement with the Federal Housing Administrator ("FHA"), the predecessor of the Secretary of HUD, which gave the agency considerable control over the management of Gramercy Spire, including the authority to approve all proposed rent increases to Gramercy Spire tenants. In addition to regulation by HUD, Gramercy Spire has also been subject to regulation by the Conciliation and Appeals Board ("CAB") pursuant to New York City's Rent Stabilization Law. However, on April 6, 1976, pursuant to 24 C.F.R. §§ 403.1–403.6 HUD preempted the application of the local New York City rent control laws to Gramercy Spire and authorized Associates to increase rents at Gramercy Spire at a rate greater than CAB would have approved. In this suit, instituted on September 9, 1976, plaintiff Gramercy Spire Tenants' Association ("Tenants' Association"), comprised of Gramercy Spire tenants, brought suit against HUD and Associates challenging the preemption order. Associates asserted

a counterclaim against plaintiff, CAB, and other defendants in which it sought relief preventing interference with the collection of HUD-approved rents and a declaration as to the validity of the preemption.

In its previous decision, the Court upheld the legality of the regulations authorizing HUD to preempt the local rent control laws but it also held that the tenants' due process rights had been violated by the procedure utilized by HUD in making its April 6 determination since the tenants had not been afforded an opportunity to present to HUD their objections to Associates' application for preemption. The Court thus held that HUD's April 6 order was "null, void and of no further force and effect," and remanded the matter to HUD for further proceedings on Associates' application. Specifically, the Court ordered that meaningful participation by the tenants in the decision-making process would require: "(1) notice to the tenants at the time of the landlord's filing an application for a rental increase pursuant to 24 C.F.R. § 403.6; (2) an opportunity for the tenants to inspect the materials sent to HUD in support of the application; (3) an opportunity for the tenants to submit opposing materials to HUD in written form; and (4) a written statement from HUD setting forth the reasons underlying its preemption decision." HUD was ordered to "assume the responsibility of formulating specific procedures and timetables consistent with this [Court's] opinion." 446 F.Supp. at 827–28.[1]

Thereafter, on March 8, 1978, Associates (1) resubmitted to HUD and filed with the Clerk of this Court, the materials that it had previously submitted to HUD in connection with its 1975 application for preemption and (2) posted notices at Gramercy Spire informing the tenants that these ma-

---

1. Initially, plaintiff, defendant Associates, and defendant HUD appealed this Court's decision to the United States Court of Appeals for the Second Circuit. However, on January 26, 1978, the parties entered into a stipulation staying those appeals since HUD was about to revise Rules 403.1 *et seq.* to "deal directly with the due process issues" before the Court of Appeals.

Rules 403.1 *et seq.* were amended, effective November 9, 1979, "to provide, in the case of unsubsidized projects, for tenant comments in [HUD's] preemption determinations . . ." 44 Fed.Reg. 58503 (October 10, 1979), in a manner similar to that suggested by this Court.

terials would be available for inspection in the building's Superintendent's office on Mondays through Saturdays for a month and that the tenants could submit comments and opposing materials to a specified person at the local HUD office. Written objections to Associates' application were submitted to HUD by an individual tenant by the name of James N. Palik on April 6, 1978 and by counsel for plaintiff on April 11, 1978. Sometime before May 5, 1978, after reviewing the tenants' objections, HUD determined that information originally submitted by Associates to HUD had been inadvertently omitted from the documents supplied to the tenants and HUD requested that Associates submit these additional materials to the tenants and give the tenants two more weeks to submit additional comments.[2] On May 11, 1978, Associates posted a notice at Gramercy Spire notifying the tenants of the availability of those additional materials and of the two-week extension. On June 9, 1978, HUD notified plaintiff's attorney that it had commenced its review of Associates' request for preemption. On July 19, 1978, HUD issued its decision reaffirming its 1976 preemption decision.[3] In a detailed report, HUD rejected the tenants' charges that the landlord and HUD had failed to follow HUD's regulations with respect to the processing of Associates' application, discussed *infra*, and rejected the tenants' request for an independent audit of Gramercy Spire's finances as "unwarranted." The report concluded that:

"As a result of tenants' comments, the HUD New York Area and Regional Offices reevaluated the owner's application, together with the expense figures used to support the request for higher rent levels

and preemption of local rents. The New York Area Office submitted a recommendation to the Office of Loan Management in HUD's Central Office in Washington in favor of preemption of local rents. "The Office of Loan Management finds, after full consideration of tenants' comments on the financial data submitted by the owner, and the recommendation made by the New York Area Office, that the level of residential income necessary to maintain and operate the project, including sufficient funds to meet the mortgage obligation, as determined by HUD in March, 1975 is appropriate. I further certify that the rentals permitted under local law at the time of the preemption determination in April, 1976 were insufficient to provide income necessary to protect the Department's economic interest in this project. I hereby reaffirm my Administrative Determination of April 6, 1976 which preempts local rent control over Gramercy Spire."

Associates has now returned to this Court to renew its motion for summary judgment on its counterclaim on the ground that the tenants have been afforded procedural due process and that there are no material issues of fact precluding the grant of summary judgment in their favor. Plaintiff opposes the motion on the ground that HUD has failed to grant the tenants the due process rights mandated by the Court's prior decision and judgment and that HUD's decision to preempt is erroneous. Plaintiff asserts that many disputed issues of fact exist and requests a continuance pursuant to Rule 56(f), F.R.Civ.P., "to examine by oral deposition and discovery the moving defendants and HUD" so that plaintiff may discover the details of HUD's decision-mak-

2. As HUD noted, it asked Associates to submit more material because plaintiff "apparently assumed that HUD relied exclusively on the financial statements prepared by the owner's CPA." HUD also noted that Associates not only made the previously filed materials available to the tenants, but "also made available the application and other salient material submitted to CAB." (HUD 7/19/78 memorandum, page 2).

3. In its written opinion, HUD noted that the procedures it followed in order to comply with the Court's guidelines were based on those set forth in 24 C.F.R. § 401; § 401 applies to subsidized, insured projects and provides procedures for notice to tenants of a rent increase application and for consideration of tenants' comments. HUD also noted that the procedures in § 401 "substantially formed the basis for the provisions incorporated in the [January 26, 1978] stipulation" in this case.

ing process with respect to preemption applications in general and with respect to Gramercy Spire in particular.

Two questions are presented by Associates' motion for summary judgment: (1) whether the tenants were afforded procedural due process as mandated by the Court in its previous opinion; and (2) whether the facts underlying HUD's preemption decision are subject to judicial review, and, assuming that they are, whether plaintiff has identified disputed issues of material fact pertaining to the appropriateness of the preemption in this case, which themselves would bar the granting of Associates' motion.

### 1. Due Process

■ Associates contends that the tenants have been afforded the due process safeguards mandated by this Court by having received notice of and access to Associates' application and an opportunity to comment thereon. Plaintiff argues that the procedure utilized by Associates and HUD was not in conformity with the Court's previous mandate, which, plaintiff argues, contemplated a *de novo* application by Associates pursuant to 24 C.F.R. § 403.6, and not merely a resubmission of Associates' previous application. Plaintiff points to various phrases in the Court's previous opinion and in the judgment which, it alleges, imply that a *de novo* application was contemplated.

The concern expressed by the Court in its previous opinion was with the fact that the tenants had had *no* input into HUD's decision-making process and no prior notice of the proposed rental increases; in fact, the tenants did not learn of the increases until a month after the preemption order was issued. Recognizing that the case law establishes that something less than a hearing-type procedure is required in the circumstances of the instant case, see 446 F.Supp. at 827, the Court attempted to formulate procedures which would safeguard the tenants' rights and yet would not be inconsistent with the policy underlying the statute, see 446 F.Supp. at 827, nor unduly

burden HUD in carrying out its responsibilities thereunder. Thus, the Court ordered that HUD follow procedures formulated by other courts in similar circumstances: it ruled that a landlord who files an application with HUD for rent increases must notify the tenants of the application and make available to them the documents submitted to HUD in support of the application; the tenants must have an opportunity to respond thereto, and HUD, should it determine that preemption is necessary, must set forth in writing its reasons therefor. These safeguards were afforded the Gramercy Spire tenants: they were notified of Associates' reapplication, provided with Associates' supporting materials, and afforded an opportunity to make objections to the application. HUD, in turn, conducted a *de novo* review of Associates' application and, having decided to reaffirm its previous preemption order, issued a written decision in which it explained how it had arrived at its decision to preempt and specifically addressed the tenants' objections, including their objections to the procedure HUD used in processing Associates' application. The Court rejects plaintiff's argument that Associates did not comply with the Court's order to notify the tenants prior to the time it submitted an application for preemption because it merely notified the tenants that it was resubmitting an application it had previously filed without prior notification to the tenants. This argument rests on a hypertechnical reading of the language in the previous opinion which primarily addressed the general procedures to be followed by a landlord and by HUD in processing a new application for preemption. The instant case deals with a slightly different problem—here an application was filed pursuant to HUD regulations which did not provide for notice to the tenants and only subsequently, and as a result of this litigation, was it determined that the tenants had a due process right to participate in the review of a preemption application. To remedy the deficiency in the original review of Associates' application, the Court remanded this matter to HUD for further proceedings in which the tenants would be afforded an

opportunity to participate. The procedures utilized by Associates and HUD on remand accomplished that purpose.

Plaintiff contends, however, that procedural due process required that a *new* application be filed for two reasons: first, plaintiff implies that Associates resubmitted its old application so as to obtain retroactive payments of rent increases awarded to Associates in 1976 should HUD reaffirm its April 6, 1976 preemption order; and second, plaintiff alleges that because many of the tenants who lived at Gramercy Spire in 1975, at the time the original application was submitted to HUD, were no longer living there in 1978, plaintiff was unable to gather information to effectively challenge the information Associates included in its application, which related to events in 1975.

■ With respect to plaintiff's first charge, the Court did not hold that Associates had to submit a new application and thus forego rental increases for 1976 to 1978, even if HUD should subsequently determine, as it later did, that those increases were justified. The Court merely ruled that HUD's 1976 order was void because it violated the tenants' rights to due process. Accordingly, the Court remanded for further proceedings on Associates' application. In fact, the previous decisions that this Court relied on when it formulated the type of proceeding mandated by due process requirements expressly recognize that should HUD, after hearing from the tenants, reaffirm its preemption order, the landlord would be entitled to collect the rental increase previously awarded it, and not merely rental increases from the date of HUD's decision after reconsideration. See *Keller v. Kate Maremount Foundation*, 365 F.Supp. 798, 804 (N.D.Cal.1972) *aff'd*, 504 F.2d 483 (9th Cir. 1974) (court ordered that should FHA reapprove rent increases, the monies paid to the landlord pursuant to the previous order, found to have violated the tenants' due process rights, would be retained by the landlord); *Ponce v. Housing Authority*, 389 F.Supp. 635 (E.D.Cal.1975) (*de novo* review of earlier filed application for rent increases ordered; reconsideration

to focus on whether prior order necessary under conditions as they existed at the time the original rent increase went into effect); *Argo v. Hills*, 425 F.Supp. 151, 159 (E.D.N.Y.1977), *aff'd without opinion*, 578 F.2d 1366 (2d Cir. 1978) (court stated that if HUD finds preemption necessary, then difference between the current lease rentals and the HUD approved rents, being held in escrow, were to be paid to the landlord). The Court agrees with the sentiment expressed in *Keller, supra*, that neither the landlord nor the tenants, who are interested in the continued economic viability of the building, should suffer because of the federal defendants' failure to afford the tenants procedural due process.

■ With respect to plaintiff's second charge, that the tenants were unable to exercise their due process rights because of the turnover of tenants between 1976 and 1978, it appears to the Court that much of the information which HUD relied on in reaching its decision was historical in nature, *i. e.*, reflected various costs of maintaining the building at a particular point in time, and thus could have been independently investigated by the tenants who now reside at Gramercy Spire. In fact, it appears that HUD did require the landlord to submit independent evidence to substantiate some of the figures it set forth in its application. See HUD's Preemption Determination dated July 19, 1978. Moreover, plaintiff has not alleged that none of the tenants who lived at Gramercy Spire during that time is unavailable for an interview. The Court also rejects this charge on the ground that it is set forth in only the most conclusory manner. Although the Court, by letter, afforded plaintiff an additional opportunity to specifically state how it was prejudiced by Associates' resubmission of its previous application, plaintiff has not responded to the Court's inquiry.

The Court thus concludes that the proceedings on remand complied with the mandate issued by this Court in its opinion and judgment and accorded the tenants their due process rights.

## 2. Judicial Review

Plaintiff alleges that HUD's decision to preempt the local rent control laws with respect to Gramercy Spire was erroneous; that the determination of economic jeopardy to HUD should rent increases not be awarded Associates was based on improper factual information; that the preemption determination was invalid because HUD did not ascertain whether or not Associates was providing adequate services to the tenants; and that plaintiff is entitled to discovery to establish these and other deficiencies in HUD's decision-making process.[4] Plaintiff also alleges that HUD did not follow its own regulations in processing Associates' application for rent increases. Thus, the next issue before the Court is to what extent, if any, HUD's preemption decision is open to judicial review.

Section 702 of the Administrative Procedure Act, 5 U.S.C. 702, provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." Section 701(a) states an exception to this general rule: judicial review is not available "to the extent that . . . agency action is committed to agency discretion by law." Several courts, including the Second Circuit, have recently held that in general HUD's approval of rent increases for federally subsidized insurance housing under Section 221(d)(3) of the NHA, 12 U.S.C. § 1715*l*(d)(3) is nonreviewable since HUD's decision constitutes agency action "committed to agency discretion" within the meaning of Section 701(a). *Grace Towers Tenants' Assoc. v. Grace Housing Development Fund Co.*, 538 F.2d 491, 496 (2d Cir. 1976); *Harlib v. Lynn*, 511 F.2d 51 (7th Cir. 1975); *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 302–04 (2d Cir. 1971); *Hahn v. Gottlieb*, 430 F.2d 1243, 1249 (1st Cir. 1970); *Feir v. Carabetta Enterprises, Inc.*, 459 F.Supp. 841 (D.C.Conn.1978); *Moorehead v. Harris*, 448 F.Supp. 1214 (N.D.N.Y.1978); *Feldman v. United States Dep't of Housing & Urban Develop.*, 430 F.Supp. 1324 (E.D.Pa.1977). Moreover in *Snyder v. Axelrod Management*, 471 F.Supp. 308 (S.D.N.Y.1979), Judge Werker of this Court has held that HUD's decision to preempt local rent control laws with respect to unsubsidized housing insured under Section 220 of the NHA, 12 U.S.C. § 1715k, is not generally open to judicial review.

In *Langevin*, Judge Friendly set out several reasons why HUD's decision to grant a rent increase in the case of a subsidized housing project was not generally subject to judicial review. He stated that "it would be most unusual for Congress to subject to judicial review discretionary action by an agency in administering a contract which Congress authorized it to make," 447 F.2d at 303; that the responsibilities confided to HUD were managerial in nature; that there was a "need for expedition to achieve the Congressional objective" of fostering investment in such housing and that a great quantity of appeals from HUD authorizations for rental increases which would probably occur should HUD's determination be held to be reviewable by the courts, would result in delay and possibly discourage private investment in such housing. The Court of Appeals thus ruled that "a mere claim of error, even if gross error" is insuf-

4. Plaintiff argues that it is entitled to extensive discovery on the promulgation of the regulations and the application of the regulations to Gramercy Spire, relying on the *Drucker* litigation in the First Circuit. See *Kargman v. Sullivan*, 552 F.2d 2 (1st Cir. 1977). However, that line of cases is not applicable here. The question to be decided in *Drucker* was whether the federal statute preempted local rent control laws *by implication.* Thus the *Drucker* court had to develop a record to determine where there were sufficient facts to support such a finding. It is not necessary to develop such a factual record in the instant case since the rule at issue contains an express preemption provision, a provision that this Court has already determined is valid and has the force and effect of federal law. *Gramercy Spire Tenants Association, supra*, 446 F.Supp. at 821–23.

See *City of Boston v. Harris*, 461 F.Supp. 1201, 1203 (D.Mass.1978) ("Because there was no express preemption operative on the facts of *Kargman v. Sullivan, supra*," the court ruled that the rationale of that case was inapplicable in a case concerning Rule 403, *et seq.*)

ficient to subject HUD's decision to judicial review; however, Judge Friendly added that the court did "not reach the question whether courts may intervene in those rare cases where the FHA has ignored a plain statutory duty, exceeded its jurisdiction, or committed constitutional error." *Id.* at 303.

The same considerations that led the *Langevin* court to conclude that HUD's decisions respecting rental increases in federally subsidized housing are generally not subject to judicial review are equally applicable to HUD's decisions to preempt local rent control laws with respect to unsubsidized federally insured housing. As in the case of subsidized housing, the parties under Section 207 have entered into an agreement wherein HUD is granted broad powers to regulate or restrict "rents or sales, charges, capital structure, rate of return and methods of operation," 12 U.S.C. § 1713(b). In addition, the decision of whether or not to preempt requires a case-by-case review of whether the rental income necessary to maintain the economic soundness of the project and to provide a reasonable rate of return of the investment consistent with providing reasonable rentals to tenants, 24 C.F.R. § 207.19(e), and thus in turn requires a complete review of operating expenses, vacancy rates and other such factors for each housing project. Such decisions are "managerial" within the meaning of *Langevin* and are best left to the agency with expertise in this area, see *Snyder, supra.* Furthermore, as with subsidized housing, a determination that HUD's preemption orders respecting unsubsidized housing are open to judicial review would result in a substantial number of appeals from HUD determinations and, most significantly, the delays resulting from such appeals "may lead . . . ultimately to less participation by private investors. . . . Were judicial review added to the already onerous burden which the landlord assumes when he contracts with [HUD], the net effect would be to discourage private investment." *Hahn v. Gottlieb, supra,* 430 F.2d at 1250. This would certainly be at cross-purposes

with the Congressional objective of the Section 207 mortgage insurance program which is to serve as "an incentive to private lenders to make funds available for the construction of family housing accommodations at reasonable rentals." *Gramercy Spire Tenants' Assoc., supra,* 446 F.Supp. at 818. The Court concludes that, even assuming that plaintiff's allegation that HUD's determination to preempt in this case was based on erroneous facts is true, that decision is not subject to review by the Court, see *Falzarano v. United States,* 607 F.2d 506 (1st Cir. 1979), and thus plaintiff is not entitled to discovery on the issue of whether HUD's decision was erroneous.[5]

■ However, the allegation that a federal agency failed to follow its own regulations is reviewable by this Court, see *Langevin, supra.* Plaintiff alleges that HUD failed to follow the procedures outlined in the regulations, specifically 24 C.F.R. § 403.6, and thus that its preemption determination is invalid. Plaintiff requests a continuance so that it may discover in detail HUD's alleged deviation from those regulations. The facts underlying plaintiff's claim that HUD failed to comply with the pertinent regulations are undisputed, however, and thus this Court is in a position to review plaintiff's charges without granting plaintiff a continuance for further discovery. The relevant facts are as follows: In November 1974, Associates filed a "hardship application" with the CAB; on April 11, 1975, Associates filed the additional information requested by CAB. In the meantime, on January 24, 1975, Associates filed an application for rental increases with HUD; that application was approved by HUD on March 18, 1975. On August 22, 1975, Associates formally notified HUD that CAB had not acted on the hardship application and that the project faced default unless it could get financial relief. On September 9, 1975, Associates requested CAB approval of the HUD-approved increase. On November 3, 1975, CAB notified

---

5. Moreover, as HUD noted in its opinion reaffirming preemption, the tenants could have received more information concerning HUD's actions from HUD itself.

Associates of its intention to process Associates' hardship application under a new formula which apparently would have resulted in a smaller rent increase than Associates had originally requested; Associates agreed to have CAB apply that new formula on December 2, 1975. No action was taken by CAB with respect to Associates' application. On March 13, 1976, the local HUD office sent its recommendation that the application of local rent control laws to Gramercy Spire be preempted in favor of HUD to their Washington office. On April 6, 1976, as amended May 8, 1976, HUD issued its preemption order. Plaintiff argues that these actions did not comply with the procedural rules then in force for determining whether HUD should exercise exclusive control over the rentals on an unsubsidized housing project.

During the time that Associates' application for a rental increase was pending before HUD, two different regulations respecting the procedures to be followed by HUD and the landlord were in effect: an interim regulation, which went into effect about one month after Associates' January 1975 application for a rent increase was submitted to HUD, which stated:

> "The local HUD office shall process a mortgagor's request for approval of increases in the maximum permissible rents . . .; The mortgagor should simultaneously submit a similar request to the local rent control board following the requirements of the local jurisdiction."

24 C.F.R. § 403.3(a) (40 Fed.Reg. 8190, Feb. 26, 1975).

HUD approved Associates' application on March 18, 1975, approximately one month after the interim regulation went into effect. A final regulation, which was substantially similar to the interim regulation, went into effect on October 22, 1975, after HUD had approved the rent increases but several months before HUD's preemption order of April 1976 was issued. It provided:

> "(a) The mortgagor shall file its application for approval of increases in rental charges with the appropriate local office

of HUD, and simultaneously therewith file an application for approval of those increases with any board in the area in which the project is located.

>     \*    \*    \*    \*    \*    \*

> "(d) The local HUD office will review the information submitted by the mortgagor, together with the decision the board, if any, and shall make a report if it deems the delay or decision of the board jeopardizes the Department's economic interest in the project and the board will not modify its position to the satisfaction of the local HUD office. The report shall be sent to the Office of Loan Management in the Central Office (hereinafter referred to as Office of Loan Management) and shall include appropriate recommendations concerning the action that should be taken by HUD. A copy of the report and recommendations shall be furnished the Regional Office."

24 C.F.R. § 403.6, 40 Fed.Reg. 49320.

Plaintiff argues that Associates and HUD failed to comply with the regulations (1) because Associates did not file "identical" applications "simultaneously" with CAB and HUD; and (2) because the local HUD office did not specifically request CAB to "modify" its position concerning rent increases prior to the time it submitted a recommendation that HUD preempt the local rent control laws with respect to Gramercy Spire to the Office of Loan Management in Washington, D. C.

■ With respect to plaintiff's first argument, Associates filed the two applications just two and one-half months apart—with the hardship application to CAB being filed first. At that time, the interim regulation requiring that applications to HUD and the local rent control board be filed simultaneously was not even in effect; it went into effect after the applications were filed and before HUD issued its decision approving the proposed rent increases. But even if the later-enacted regulation applies here, the requirements of the rule have been met since CAB made no determination with respect to Associates' application prior to the

time that the HUD application was filed so that the two applications were pending simultaneously. See *Snyder, supra,* (where CAB application filed four and one half months *after* HUD application, no violation of these statutory requirements). Moreover, the purpose behind this requirement is to assure that a mortgagor applies to the local board for relief prior to the time that the mortgagor applies to HUD; only if the "delay or decision of a [local] board . . jeopardizes [HUD's] economic interest in the project," 24 C.F.R. § 403.5, will HUD act. This is consistent with HUD's general policy of "not interfer[ing] in the regulation by a local rent control board . . . of rents" in the case of unsubsidized, federally-insured projects. *Id.* That policy has been satisfied in this case since CAB had a full opportunity to consider Associates' application prior to the time HUD issued any decisions. Moreover, HUD specifically stated in its preemption order that CAB's delay in approving the implementation of the HUD-authorized rent increases jeopardized HUD's economic interest in Gramercy Spire.

Plaintiff's additional argument that Associates was obligated to file identical applications with CAB and HUD finds no support in the regulations: the interim regulation merely requires that a "similar request" be submitted and the final regulation merely states that the mortgagor shall file "an application for approval" to the local rent board. Associates complied with these requirements.

Plaintiff's second argument is that HUD failed to comply with the requirement in § 403.6(d) that it make an effort to persuade the local rent board to modify its position. In this case, CAB failed to act on Associates' hardship application despite requests by Associates and HUD for action on CAB's part. Furthermore, the regulation also provides that a local HUD office "shall make a report [to the Office of Loan Management] if it deems the delay . . . of the board jeopardizes the Department's economic interest in the project . . .." In this case, there was such a delay on the part of CAB. Indeed, even if CAB had not

delayed and had granted Associates' hardship application under its own formula, the amount of that increase would have been less than the amount that HUD had determined was necessary to protect its interest in Gramercy Spire and thus HUD would have had to preempt the local rent control laws as they applied to Gramercy Spire in any event. See *Snyder, supra.*

The Court thus concludes that Associates and HUD complied with the applicable regulations. And even if they deviated from the technical language of the rules, the spirit of the regulations has been complied with; both CAB and HUD had an opportunity to review Gramercy Spire's financial condition prior to the time that HUD issued its preemption order. Finally, courts have refused to invalidate rent increases because of a technical violation of HUD regulations where, as here, there has been no prejudice to the tenants. See *Snyder, supra; Moorehead, supra; Dew v. McLendon Gardens Associates,* 394 F.Supp. 1223 (N.D.Ga.1975). See also Note, *Violations by Agencies of Their Own Regulations,* 87 Harv.L.Rev. 629 (1974).

In summary, Associates' motion for summary judgment on its counterclaim is granted; plaintiff's request for a continuance pursuant to Rule 56(f), F.R.Civ.P., is denied.

SO ORDERED.