ALLERTON COOPS TENANTS ASSOCIATION et al., Respondents, v ABRAHAM BIDERMAN, as Commissioner of the Department of Housing Preservation and Development of the City of New York, et al., Appellants.

First Department, April 1, 1993

### APPEARANCES OF COUNSEL

*Fay Ng* of counsel, New York City *(Pamela Seider Dolgow* and *Susan Shapiro* with her on the brief; *O. Peter Sherwood, Corporation Counsel* for New York City, attorney), for Abraham Biderman, appellant.

*Gerald Goldstein* of counsel, New York City *(Matthew Feigenbaum* with him on the brief; *Davidoff & Malito,* attorneys), for Allerton Associates and another, appellants.

*John D. Gorman,* New York City, for respondents.

### OPINION OF THE COURT

MILONAS, J.

Plaintiffs, the tenants of six five-story buildings renovated under a loan program administered by the New York City Department of Housing Preservation and Development (HPD), commenced this action for declaratory and injunctive relief, alleging that they were not accorded constitutionally adequate notice of the determination that the work was complete nor given an opportunity to challenge that determination and comment on the prospective rent increases.

The underlying facts are undisputed. In September of 1985, Allerton Associates applied to HPD for a participation loan pursuant to Private Housing Finance Law § 800 *et seq.,* which authorizes loans to be made to owners of multiple dwellings

by private investors and the City to rehabilitate deteriorating housing accommodations. Under this program, the owner, prior to beginning the renovation, must obtain a financial commitment from both the City and a participating lender, and, after the work is completed, the City and participating lender will pay off the construction loan procured for the rehabilitation and take mortgages on the property. Section 804 of the act requires HPD to restructure the rents when the refurbishment has been achieved. In that regard, the rents are initially established at levels deemed sufficient to pay for the work done and to permit the dwelling to be properly maintained. Rent-controlled apartments are decontrolled, and the entire building is placed in the rent stabilization system. Any rent adjustments thereafter are made in accordance with the rent stabilization guidelines.

The subject buildings, comprising a 698-unit housing complex located in the Pelham Parkway section of the Bronx, were clearly in need of extensive rehabilitation. Defendant Commissioner of HPD states that the application by Allerton Associates was approved because its proposal was economically feasible for the tenants, as well as the owners, and, in addition, Federal funds would be available for the renovation and as subsidies to approximately 300 tenants. The existing rents averaged $57.48 monthly per room for rent-controlled occupants and $81.65 per room each month for those under rent stabilization, but HPD's analysis indicated that the anticipated improvements would result in an average monthly rent of $114.55 per room.

Private Housing Finance Law § 803 mandates that tenants be advised of the proposed rehabilitation and the expected rent increases. Moreover, a representative of the agency is required to meet at least once with the tenants or to have offered to do so. Therefore, in a letter dated December 2, 1985, Allerton Associates advised the tenants of the renovation, the status of the loan commitments and the expected rent rises. The tenants were also apprised that they could discuss the matter at a meeting scheduled on December 10, 1985 with a representative of HPD. A follow-up letter dated February 3, 1986 confirmed the information that had been provided at the meeting and stated that the tenants had 21 days to comment, but HPD received no responses.

In December of 1987, the construction inspector certified that the rehabilitation had been substantially completed. Defendant Commissioner of HPD claims that the unfinished

work consisted primarily of some painting, missing or loose fixtures, window insulation, caulking and minor leaking. Consequently, HPD's Division of Engineering and Architectural Services agreed with the assessment by the construction inspector, and the tenants were notified in a letter dated February 5, 1988 that the rehabilitation was substantially complete and that the restructured rents, as announced in December of 1985, would become effective on March 1, 1988. The tenants were also told that they had seven days in which to submit comments.

Notwithstanding plaintiffs' contention that such a short time constituted a due process violation, the tenants' association sent two letters to HPD, and about 40 individual tenants replied to HPD's solicitation. All of these responses were forwarded for review to the agency's Division of Engineering and Architectural Services. The tenants were advised that if the unfinished work described in their communications was found to be within the scope of the Participating Loan Program, HPD would withhold in escrow funds twice the amount of the estimated uncompleted work in order to ensure performance.

However, plaintiffs instituted this action on May 3, 1988 to annul the determination that the rehabilitation was substantially complete. They also seek to bar any rent increases imposed as a result of the work and to restrain HPD from exempting the rent restructuring process from the provisions of the rent control and rent stabilization laws. It is their position that not only were their due process rights abridged but that section 804 of the Private Housing Finance Law is unconstitutional to the extent that it directs HPD to set the initial rent for each unit after the renovation, thereby depriving them of the protection of the rent control and rent stabilization laws. Plaintiffs also assert that the new rents are arbitrary and capricious since there is no correlation between the renovations and the new rents.

The Commissioner of HPD subsequently moved jointly with Allerton Associates for summary judgment dismissal. Although defendants originally requested unsuccessfully that the complaint be dismissed in its entirety, another Judge permitted them to move to dismiss the first two causes of action, and it is the latter denial that is being appealed herein. In the opinion of the Supreme Court, "there was a two year gap between the time the tenants were first apprised of the proposed rent restructuring and the February 3, 1988 [sic]

letter from HPD which announced the new rents and gave them seven days to comment. Whether or not this seven day period provided 'notice' sufficient to satisfy due process requirements is a question of fact which cannot be decided on these papers." Further, the court perceived "questions as to whether the rehabilitation has been completed."

It is first necessary to consider whether the rent control and rent stabilization laws create a property interest such as would enable plaintiffs to complain of a due process violation. In *Morillo v City of New York* (178 AD2d 7, 12, *appeal dismissed* 79 NY2d 1039, *lv denied* 80 NY2d 752), this Court declared that "[i]t is well-settled law that property interests are created by State law" (citing *Board of Regents v Roth,* 408 US 564). Similarly, the Court of Appeals also quoted from *Board of Regents v Roth (supra),* in *Alliance of Am. Insurers v Chu* (77 NY2d 573, 585), in reaffirming the proposition that State law may generate constitutionally protected property interests.

This Court specifically recognized the existence of due process rights on the part of low-income tenants who "have a protected interest in decent, safe and adequate low-rent housing" *(Union Of City Tenants v Koch,* 177 AD2d 328, 329; *see also, Bryant Ave. Tenants' Assn. v Koch,* 127 AD2d 470, *affd* 71 NY2d 856). A number of Federal decisions have also upheld property interests arising out of rent control or rent stabilization schemes, entitling the effected tenants to procedural due process *(see, Snyder v Axelrod Mgt. Co.,* 471 F Supp 308; *Gramercy Spire Tenants' Assn. v Harris,* 446 F Supp 814; *515 Assocs. v City of Newark,* 424 F Supp 984). Yet, the Court of Appeals, in a case which has never been directly repudiated, previously concluded that there was no merit to the claim "that the tenants are constitutionally entitled to notice and an opportunity to be heard before rents are adjusted" *(Bedford Bldg. Co. v Beame,* 38 NY2d 729, 731; *see also, I.L.F.Y. Co. v Temporary State Hous. Rent Commn.,* 10 NY2d 263, *appeal dismissed* 369 US 795; *Wasservogel v Meyerowitz,* 300 NY 125).

Thus, while the recent trend has been for courts to find that there is a constitutionally protected property interest in legislation such as that establishing rent control or stabilization, the legal authority relating to this issue is not entirely clear. In the view here, due process rights are conferred whenever a mandatory regulatory scheme consisting of specified and particularized criteria has been adopted *(see, Hewitt v Helms,* 459 US 460, 471-472; *Griffith v Federal Labor Relations Auth.,* 842

F2d 487, 495). However, even assuming that plaintiffs are endowed with a constitutionally protected property interest in the rent control and rent stabilization laws, there is no indication that their right to due process was in any way violated.

In *Matter of Laureano v Koch* (100 AD2d 192, 198, *revd on other grounds* 64 NY2d 1105), this Court sustained the procedures applicable to the rent restructuring of City-owned in rem properties, observing that due process "would be satisfied if there were service of a notice of a proposed increase in rent well in advance of the date of the increase, an opportunity to the tenants for filing written objections and the right to the tenants or their representatives to submit material they considered relevant to disprove the need for the rent increase". It is significant that the method employed to raise rents in connection with the in rem housing is not significantly different than the one involved in the present situation. The argument by the tenants' association that it was not given adequate advance notice to present its objections to the increase in rent was also rejected in *Matter of De Luise v Gliedman* (109 AD2d 601, *affd* 65 NY2d 916), where the Court ruled that HPD regulations under the Private Housing Finance Law were constitutionally acceptable *(see also, Burr v New Rochelle Mun. Hous. Auth.,* 479 F2d 1165).

The tenants herein were informed of the intended renovations and the anticipated rent restructuring some two years before the new rents went into effect. Indeed, they were notified of the proposed rent rises at least twice in writing and once in person. Yet, they never submitted any objections until after the rehabilitation had been substantially completed and they were advised on February 5, 1988 that the rents would go into effect on March 1, 1988. Although the tenants were then told that they should present their comments within seven days, the fact is that they could have taken even more time to offer their views, and their papers would have been received and accorded due consideration.

Contrary to plaintiffs' assertion that the seven-day period was not enough to afford them an opportunity to comment meaningfully, the tenants' association wrote two letters of *protest* which contained detailed lists of supposedly uncompleted work, and some 40 individual tenants sent comments. Moreover, even prior to the notice of February 5, 1988, the

tenants' association, in a letter dated January 7, 1988, urged that "the proposed rent hike schedules that have been proposed by HPD and Allerton Associates be withdrawn and reconsidered in light of the prolonged and shabby Rehab work." Other letters of complaint were forwarded from tenants throughout the renovation process, and, according to the Commissioner, HPD staff met frequently with the tenants and representatives of the owner to discuss the tenants' criticisms. Under these circumstances, the notice available to the tenants can hardly be deemed constitutionally defective.

Finally, it should be noted that to the extent that the tenants are disputing the propriety of the increases in relation to the adequacy of the rehabilitation work actually performed, HPD's determination should have been challenged in a CPLR article 78 proceeding. While this declaratory judgment action could conceivably have been converted into such a proceeding, plaintiffs have chosen to attack the agency's procedures and the validity of the underlying statute rather than to demand review of HPD's decision. Further, if the tenants are dissatisfied with the quality of their services or the condition of their dwelling, they always have the option of petitioning the Department of Housing and Community Renewal for rent reduction or they may plead abatement as a defense in any rent proceeding commenced against them in the Civil Court. The record, however, reveals no question of fact that would preclude summary judgment in favor of defendants in the action before us now.

Therefore, the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on December 9, 1991, which denied defendants' motion for summary judgment dismissing the first and second causes of action, should be reversed, on the law, and the motion granted, without costs or disbursements. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the first and second causes of action.

CARRO, J. P., ELLERIN, KUPFERMAN and RUBIN, JJ., concur.

Order of the Supreme Court, New York County, entered on December 9, 1991, which denied defendants' motion for summary judgment dismissing the first and second causes of action, is reversed, on the law, and the motion granted, without costs or disbursements.